MARTIN CHARCOAL, INC. and Crum & Forster *v.*
Darrell Jackson BRITT

CA 07–1079                                              284 S.W.3d 91

Court of Appeals of Arkansas
Opinion delivered May 14, 2008

---

*Barber, McCaskill, Jones & Hale, P.A.*, by: *Michael Lee Wright*, for appellants.

*Spencer Law Firm*, by: *Frederick S. "Rick" Spencer*, for appellee.

JOHN B. ROBBINS, Judge. On March 4, 1991, appellee Darrell Jackson Britt sustained a compensable injury to his heart while working for appellant Martin Charcoal, Inc. On that day, Mr. Britt was working near a charcoal kiln that was producing thick toxic smoke. After inhaling the smoke, he suffered an acute myocardial infarction. In an opinion dated November 27, 1996, the Workers' Compensation Commission found that the myocardial infarction was causally related to the smoke inhalation, and the Commission awarded permanent and total disability benefits for that injury. No appeal was taken from that decision.

On October 24, 2003, Mr. Britt's counsel submitted a letter to the Commission seeking compensation for "the medical bills arising out of his injury already found to his heart and lungs on or about March 4, 1991, during the course of and arising out of employment with Martin Charcoal." Mr. Britt's counsel asserted in this letter that the inhalation of chemicals had caused permanent damage to Mr. Britt's lungs, and that Martin Charcoal was no longer paying for breathing medications, which it had been covering over the past three years. Martin Charcoal controverted compensability for Mr. Britt's lung condition.

After a hearing held on July 19, 2006, the ALJ entered an order finding that Mr. Britt's claim for a separate lung injury was barred by the applicable statute of limitations. Thus, the ALJ did not discuss whether a lung injury occurred on March 4, 1991. The ALJ further rejected Mr. Britt's alternative claim that his lung condition is a compensable consequence of the original compensable heart injury. Finally, the ALJ awarded reasonably necessary medical treatment, including but not limited to a concurrent heart/lung transplant, on the basis that both transplants are necessary to stabilize or maintain the compensable heart condition. The Commission affirmed and adopted the ALJ's decision.

Martin Charcoal now appeals from the Commission's most recent decision, arguing that the Commission erred in finding that a heart/lung transplant is reasonably necessary medical treatment for Mr. Britt's compensable heart injury. Mr. Britt has cross-appealed, arguing (1) that the Commission erred in ruling that his claim for a separate lung injury was barred by the statute of limitations; (2) that the preponderance of the evidence established separate compensability of his lung condition; and (3) that, alternatively, there is no substantial evidence to support the Commission's finding that his lung condition is not a compensable consequence of the March 4, 1991, compensable heart injury. We affirm on direct appeal, and we affirm on cross-appeal.

When reviewing a decision from the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission and affirm the decision if it is supported by substantial evidence. *Lepel v. Vincent*, 96 Ark. App. 330, 241 S.W.3d 784 (2006). Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. *Id.* Where the Commission denies a claim because of the claimant's failure to meet his burden of proof, the substantial-evidence standard of review requires that we affirm the Commission's decision if its opinion displays a substantial basis for the denial of relief. *Davis v. Old Dominion Freight Line, Inc.*, 341 Ark. 751, 20 S.W.3d 326 (2000). It is the Commission's function to weigh the medical evidence and assess the credibility and weight to be afforded any testimony. *Clairday v. Lilly Co.*, 95 Ark. App. 94, 234 S.W.3d 347 (2006).

Mr. Britt testified that he is fifty-five years old and that the symptoms concerning his lungs began on March 4, 1991, when he suffered the compensable injury from smoke inhalation. Mr. Britt stated that his symptoms include shortness of breath and pressure in his lungs and chest, and that his lungs have progressively worsened. He also stated that his heart condition causes him to be short of breath. Mr. Britt maintained that he never experienced shortness of breath or any other respiratory problems prior to the March 4, 1991, heart attack.

Mr. Britt acknowledged that he was smoking a pack or a pack and a half of cigarettes per day before suffering the heart attack in March 1991. He stated that he quit smoking thereafter, but had repeated relapses. He testified:

I would have maybe four to six relapses a year, which would last for maybe a week to two weeks. It might take me a week to smoke a pack of cigarettes. So, I was perhaps smoking two to three cigarettes per day during my relapses. That was true up until the year 2000.

Mr. Britt testified that his condition deteriorated during a vacation in Hawaii in June 2000. The day after he arrived, his wife took him to the hospital where he was administered breathing treatments. After returning from the vacation, Mr. Britt was referred to a pulmonologist, Dr. James L. Hargis. According to the testimony of Mr. Britt's wife, Mr. Britt's condition has steadily worsened since the Hawaii vacation, and he has been on oxygen twenty-four hours a day since 2003.

Dr. Hargis testified that he first saw Mr. Britt in 2000 on a referral from Mr. Britt's cardiologist, Dr. Donald Myears. A pulmonary function study conducted on July 13, 2000, revealed a severe obstructive lung defect. On August 25, 2000, Dr. Hargis diagnosed chronic obstructive pulmonary disease (COPD). In a June 24, 2003, letter to appellant's insurance carrier, Dr. Hargis wrote, "Mr. Britt has severe chronic obstructive lung disease and has a previous 29 pack year history of smoking. There is no association between his COPD and previous myocardial infarction." In his deposition, Dr. Hargis testified:

Mr. Britt suffers from a very severe case of COPD. I noted in my records, for the sake of completeness, that Mr. Britt smoked a pack of cigarettes per day for 29 years. Smoking is the number one cause of COPD and emphysema. The severe COPD indicated in my notes means Mr. Britt has severe obstruction to the air flow through the bronchial tubes, which we have documented with the pulmonary function tests. I think it is secondary to his smoking. I believe the primary cause of his COPD is his smoking history. I doubt that his COPD was caused in any way by the accident he experienced at work in 1991.

Dr. Myears testified that he first saw Mr. Britt in the early 1990s and has been seeing him since that time on a regular basis. Dr. Myears stated that Mr. Britt has a diagnosis of an enlarged and weak heart muscle, with congestive heart failure and severe lung disease. In a letter dated June 12, 2003, Dr. Myears documented a lung injury "which was unmasked [in 2000] by the use of beta blockers for his cardiac condition," and further wrote that Mr.

Britt was evaluated for a heart/lung transplant but was not listed for consideration at that time. However, Mr. Britt subsequently visited the Mayo Clinic in Rochester, Minnesota, and in a letter dated June 2, 2005, Dr. Brooks Edwards expressed an intention to proceed with a combined heart/lung transplant taking into consideration Mr. Britt's "severe limitation and relative youth." Mr. Britt's name was placed on the national computer list for a heart/lung transplant on July 13, 2005.

Dr. Myears gave the following testimony concerning the prospect of a heart/lung transplant:

> I believe realistically that a heart transplant is Darrell's only chance at long-term survival. With regard to whether he only has a heart transplant, knowing what I know about his lungs, I am not a pulmonologist, so I would not be able to make a very specific prognosis, but in general terms, he would be extremely limited by shortness of breath and his quality of life would not be substantially different than it is now because his limiting factor at that time would be his severe lung disease. Presuming a successful heart and lung transplant procedure with no complications, I think such a procedure would be reasonable care that is necessary to help Darrell survive and have a longer life span.

> . . . .

> I believe the people at Barnes Hospital concluded [in 2003] that in order to completely rectify Mr. Britt's problems, he would require a heart/lung transplantation and because of his age, they felt he was not an excellent candidate for it. Assuming a successful procedure with no complications, I would expect a heart/lung transplant to result in an excellent quality of life for Mr. Britt compared to what he has been dealing with for the last 15 years. I think he would be extremely limited if he were to receive only one organ system or the other. If the lungs are transplanted, he would still be a class 3 to 4 debilitated because of his heart. If he had his heart transplant only, I am afraid he would still be oxygen dependent and probably limited to walking no more than 50 to 100 feet because of his lung disease.

When asked what Mr. Britt's prognosis would be if he did not have the heart and lung transplants, Dr. Myears replied, "I will be surprised if he lasts longer than twelve to eighteen months."

As to the causation of Mr. Britt's medical problems, Dr. Myears reported on February 8, 2006:

It is my opinion based upon a reasonable degree of medical certainty that although Darrell Britt smoked prior to his inhalation injury of charcoal smoke and dust in 1991, the major cause (more than 50%) of his need for a heart/lung transplant or other medical treatment to his lungs and heart was the inhalation of charcoal smoke and dust in 1991 which rendered him permanently and totally disabled and the consequent limitations.

In his deposition, Dr. Myears testified that smoking certainly plays a role in Mr. Britt's lung condition, but he could not assign percentages to his lung dysfunction as to what percentage was due to chronic smoking versus the initial toxic fume exposure. However, Dr. Myears went on to testify that, "I think within a degree of medical certainty that the toxic exposure he had to his lungs at the time of the inhalation set the stage for the lung disease that he now has. I think there is a greater than fifty percent chance that the toxic lung exposure has lead to the severity of lung disease that Mr. Britt now has."

Dr. Louis Roddy reviewed the medical records and disagreed with Dr. Myears regarding the causation of Mr. Britt's lung disease. In a report dated February 8, 2006, Dr. Roddy gave the following opinion:

It is apparent from a review of these records that prior to Mr. Britt's inhalation injury in 1991, his pulmonary status was near normal. However, it is important to note at this time that both prior to and following the inhalation injury in 1991 Mr. Britt was a rather heavy tobacco user. Thus, although he likely had near normal pulmonary functions, he may have had subtle small airway abnormalities as a result of his tobacco use as early as 1991. Following Mr. Britt's injury and despite the suggestions of multiple physicians, Mr. Britt continued to smoke. It is difficult to quantitate Mr. Britt's pack year consumption but in all likelihood it exceeds 60 pack years. Thus, it is my opinion based on reasonable medical probability that the cause of Mr. Britt's obstructive lung disease is the continued use of cigarettes. In addition, Mr. Britt's continued use of tobacco from 1991 until 2001 worsened his underlying lung disease and was more likely than not responsible for the chronic obstructive pulmonary disease. It is also my impression based on reasonable medical probability that Mr. Britt's current rather significant obstructive lung disease is more likely than not related to tobacco consumption and not to any inhalation injury. Thus, it follows that Mr. Britt's need for a lung transplant as a result of his obstructive lung disease is not related to his inhalation injury but as stated previously related to

his lengthy tobacco abusing history. Thus, it is my opinion based on reasonable medical probability that Mr. Britt's lung transplant is necessary not as the result of any compensable injury but solely the result of ongoing rather heavy tobacco consumption.

In resolving the issues in this appeal and cross-appeal, we will first address appellant Martin Charcoal's sole argument that it raises in its direct appeal. Martin Charcoal argues that there is no substantial evidence to support the Commission's conclusion that medical treatment including a heart/lung transplant is reasonably necessary treatment for Mr. Britt's compensable heart injury.

The statute applicable to Mr. Britt's request for reasonably necessary medical treatment provides:

> The employer shall promptly provide for an injured employee such medical, surgical, hospital, and nursing service, and medicine, crutches, artificial limbs, and other apparatus as may be reasonably necessary for the treatment of the injury received by the employee.

Ark. Code Ann. § 11-9-508(a) (1987). Martin Charcoal contends that the heart/lung transplant proposed by Mr. Britt's doctors does not constitute reasonably necessary treatment. Appellant notes that Mr. Britt was evaluated in 1994 for a heart transplant, but his doctors concluded that the procedure was not necessary and Mr. Britt continued with aggressive medications. Appellant submits that Mr. Britt's heart condition was essentially stable from March 1991 through 2000, and that the subsequent deterioration of Mr. Britt's heart and lungs was the result of his continued smoking against his doctor's orders. Appellant notes that for reasons including Mr. Britt's age and the waiting period for a heart/lung organ block, he was again found not to be a proper transplant candidate in 2003. Appellant contends that simply because Mr. Britt was placed on a list for a heart/lung transplant in 2005 does not make the procedure reasonably necessary treatment.

Martin Charcoal further argues that even if a heart transplant is reasonably necessary, a lung transplant is not. While Dr. Myears testified that Mr. Britt would have a low quality of life if he has only a heart transplant, the appellant asserts that this fact does not render a lung transplant compensable where appellee's lung injury was unrelated to the compensable incident.

We hold that there was substantial evidence to support the Commission's finding that a heart/lung transplant constitutes reasonably necessary treatment for Mr. Britt's compensable heart

injury. In so holding, we are guided by our opinion in *Artex Hydrophonics, Inc. v. Pippin*, 8 Ark. App. 200, 649 S.W.2d 845 (1983), which was relied on by the Commission in reaching its decision. In that case, the appellee was involved in an accident that resulted in the compression of four or five vertebrae. He failed to respond to ordinary treatment, and was referred to a cancer specialist, who discovered widespread bone cancer that predated appellee's work injury. In an earlier opinion, the court of appeals determined that the cancer had weakened the appellee's bones, thus predisposing him to compression fractures and making cancer treatments, consisting of radiation and chemotherapy, necessary both to halt the spread of the cancer and to stabilize the bones and help heal the fractured vertebrae. A subsequent Commission opinion found that additional chemotherapy was necessary not only to maintain the stabilization of the cancerous condition, but to stabilize the damaging effects of the compensable injury. In affirming that decision on appeal, we held that "medical treatments which are required so as to stabilize or maintain an injured worker are the responsibility of the employer." *Id.* at 203, 649 S.W.2d at 846.

In the present case, Mr. Britt was left permanently and totally disabled following his compensable heart attack in 1991. He was evaluated in 2003 for a possible heart/lung transplant but it was deemed unsuitable at that time due to facts such as Mr. Britt's age. However, after subsequent evaluations the treatment plan changed and Mr. Britt was placed on the list for a transplant. Dr. Myears gave the opinion that a heart/lung transplant was the only realistic chance for long term survival, and that a heart transplant alone would be of little use. Dr. Hargis characterized Mr. Britt's heart and lung problems as "severe" and thought that the conditions aggravated each other. And there was evidence that a heart transplant alone was not a viable option given Dr. Joseph Rogers's report on March 14, 2003, that, "I am afraid that the severity of his lung disease will preclude him from undergoing isolated cardiac transplantation and if he is up to undergo any kind of thoracic organ transplantation, he would require a combined heart and lung block."

This medical evidence was substantial evidence to support the Commission's finding that Mr. Britt must undergo a lung transplant as well as a heart transplant to stabilize or maintain his compensable heart condition, in accordance with our prece-

dent in *Artex Hydrophonics, supra.* Martin Charcoal contends that *Artex Hydrophonics* should not be followed because there was no legal authority to support our proposition in that case that medical treatments that are required so as to stabilize or maintain an injured worker are the employer's responsibility. However, we think our interpretation of what constituted "reasonably necessary medical treatment" in that case was based on sound reasoning, and we reject appellant's invitation to overrule it. Significantly, both *Artex Hydrophonics* and the present case involve injuries occurring before July 1, 1993, so the applicable law requires liberal construction of the statutes and the Commission to draw all reasonable inferences favorable to the claimant. *See Aluminum Co. of Am. v. Rollon,* 76 Ark. App. 240, 64 S.W.3d 756 (2001); *Howard v. Ark. Power & Light Co.,* 20 Ark. App. 98, 724 S.W.2d 193 (1987). Martin Charcoal also attempts to distinguish the present facts from *Artex Hydrophonics* because that case involved treatment of a preexisting condition. We, however, conclude that it is immaterial whether Mr. Britt's lung condition developed before or after the compensable injury. The fact remains that the heart/lung transplant is necessary to stabilize or maintain the appellee's compensable condition. Accordingly, we affirm on direct appeal.

█ We now turn to Mr. Britt's arguments on cross-appeal. Mr. Britt first argues that the Commission erred in ruling that his claim for a separate lung injury was barred by the statute of limitations. Because Mr. Britt's alleged lung injury occurred before Act 796 of 1993 became effective, the timeliness of his claim must be determined under the laws then in effect. *See Taylor v. Producers Rice Mill, Inc.,* 89 Ark. App. 327, 202 S.W.3d 565 (2005). This is significant because the 1993 Act added the provision that a latent injury or condition shall not delay or toll the limitations periods.

Arkansas Code Annotated section 11-9-702(a) (1987) provides, "A claim for compensation on account of an injury, other than an occupational disease and occupational infection, shall be barred unless filed with the Commission within two (2) years from the date of the injury." Section 11-9-702(b) (1987) provides, "In cases where compensation for disability has been paid on account of injury, a claim for additional compensation shall be barred unless filed with the Commission within one (1) year from the date of the last payment of compensation, or two (2) years from the date of the injury, whichever is greater." In his argument, Mr. Britt contends

that his claim for a lung injury was timely filed at the same time he claimed a heart injury following the work-related accident in 1991. He maintains that his initial claim included *all* conditions arising from that incident. Mr. Britt submits that there is simply no requirement that an injured worker state with specificity the precise nature of the injury sustained, and that often times the specific nature of an injury cannot be determined until after a claim is determined to be compensable and medical treatment provided. Thus, Mr. Britt characterizes his claim as one for additional benefits under subsection (b), and asserts that because the appellants have continued to pay compensation throughout this case, the one-year limitation period under that subsection never elapsed and his claim is not barred.

We cannot agree with Mr. Britt's assertion that he effectively filed a claim for a lung injury at the same time he filed his initial timely claim for a heart injury. It is evident from the record that Mr. Britt initially claimed only a heart injury, and in the Commission's November 27, 1996, opinion awarding compensation, the Commission found only that Mr. Britt sustained a compensable myocardial infarction. A single employment accident may create more than one "compensable injury," for purposes of an act, which in turn results in more than one date for the start of the statute of limitations. 100 C.J.S. *Workers' Compensation* § 825 (2000). Mr. Britt's heart condition and lung condition are two distinct injuries for which compensation must be timely claimed under our statutes. The first time Mr. Britt claimed compensation for a lung injury was on October 24, 2003, which was outside of the two-year limitations period. Accordingly, appellant's claim cannot be considered as one for additional compensation under the theory advanced in his brief because, contrary to his argument, he did not timely claim compensability for any lung disorder. The Commission correctly concluded that Mr. Britt's claim for a compensable lung injury was barred by the statute of limitations.

Mr. Britt relies in the alternative on the "latent injury" rule, which applies in cases predating Act 796 of 1993. *See Taylor, supra.* In *Arkansas Louisiana Gas Co. v. Grooms*, 10 Ark. App. 92, 661 S.W.2d 443 (1983), we explained that the two-year limitations period does not begin to run until the true extent of the injury manifests itself and causes an incapacity to earn wages. Because Mr. Britt was rendered incapable of earning any wages by his compensable heart condition long before he alleged a lung injury, we are

concerned here with when the extent of the lung injury manifested itself. Mr. Britt contends that he was unaware of the true extent and nature of his lung condition until a visit to the Barnes-Jewish Hospital on March 11, 2003. With this we cannot agree.

Mr. Britt fails to recognize that a June 10, 2000, x-ray gave proof of his lung condition, revealing "markedly abnormal lungs raising question of severe asthma/chronic obstructive pulmonary disease." A July 13, 2000, pulmonary function test showed a "severe obstructive lung defect," and on August 25, 2000, Dr. Hargis diagnosed COPD. Thus, the extent and nature of Mr. Britt's lung condition manifested itself more than two years prior to his claim filed on October 24, 2003, and the Commission correctly found that the latent injury rule did not save Mr. Britt's claim.

Mr. Britt's next argument is that the preponderance of the evidence established compensability for his lung condition that occurred on March 4, 1991, and that the Commission erred in failing to address this issue. He contends that the record overwhelmingly supports his contention that the inhalation of toxic smoke on that day was causally related to his lung injury.

Because Mr. Britt's claim for a separate lung injury occurring on March 4, 1991, is barred by the statute of limitations, we need not address the merits of this argument. The Commission declined to consider the issue of compensability arising on that date, and so do we.

Mr. Britt's remaining argument is that the Commission erred in failing to find that his lung condition is a compensable consequence of the compensable heart injury. If an injury is compensable, then every natural consequence of that injury is also compensable. *Air Compressor Equip. v. Sword*, 69 Ark. App. 162, 11 S.W.3d 1 (2000). Mr. Britt refers us to Dr. Myears's opinion that the use of beta blockers "unmasked" his lung disease, and he urges that it was the use of beta blockers that aggravated or accelerated his lung condition.

Mr. Britt's final argument is without merit. Dr. Myears believed that Mr. Britt sustained a separate lung injury on March 4, 1991. Dr. Hargis believed that there was no association between appellee's COPD and the previous myocardial infarction. And Dr. Roddy gave the opinion that appellee's need for a lung transplant

was solely the result of tobacco consumption. The Commission correctly indicated that there was a lack of proof that the lung condition was a compensable consequence of the heart injury, and its opinion displays a substantial basis for denying relief for that claim.

Affirmed on direct appeal; affirmed on cross-appeal.

MARSHALL and BAKER, JJ., agree.