Cite as 2016 Ark. App. 498

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV-16-446

| | |
|---|---|
| | Opinion Delivered October 26, 2016 |
| SHANNON GODWIN | APPEAL FROM THE ARKANSAS |
| APPELLANT | WORKERS' COMPENSATION |
| | COMMISSION |
| V. | [NO. G409544] |
| GARLAND COUNTY LANDFILL | |
| AND AAC RISK MANAGEMENT | |
| APPELLEES | AFFIRMED |

## BRANDON J. HARRISON, Judge

Shannon Godwin appeals the Arkansas Workers' Compensation Commission's (the Commission) decision that he failed to prove that he sustained a compensable left-knee injury. He argues that the Commission's decision was based on speculation. We disagree and affirm.

Godwin filed a workers' compensation claim on 3 December 2014, alleging that he sustained a compensable injury to his left knee on 17 March 2014. Godwin's employer, Garland County Landfill (Garland), controverted the claim in its entirety. At a hearing before an administrative law judge (ALJ) in April 2015, Godwin testified that in March 2014, he had worked for Garland for approximately five months and that his job consisted of driving a semi truck to the Pulaski County landfill and back twice a day. He testified that on March 17, he was "getting [his] stuff out of the truck and slipped off the top step

and fell and jammed [his] knee." Godwin said that he "just wanted to leave" and did not tell anyone that he had been hurt. He claimed that someone named Mike and another person that he did not know witnessed his injury. He went to the doctor on April 29, approximately five weeks later, and eventually had three arthroscopic surgeries on his knee in May, June, and December 2014. Godwin also confirmed that he suffered a compensable injury to his neck and shoulder in 2012, from which he received some temporary disability benefits and was still receiving medical treatment. He had recently been approved for neck surgery, which was scheduled for May 2015.

Godwin explained that he initially used his wife's insurance to pay for the treatment of his knee because

> I didn't want nothing to do with workmen's comp, I mean, Garland County. I was humiliated and, you know, I just didn't want nothing to do with them. You know, I just, that was it.
> I just, my insurance was turned down, said it was a workmen's comp case so I had to try to, you know, get workmen's comp, Garland County to pay for it.

Godwin said that he had been "written up" a couple of times by Garland and that on March 17, he had been fired. He was told to collect his personal items out of the truck, and that is when he had the accident that caused his knee injury. He also said that he had slipped on some ice at work and hurt the same knee about a month previously, but there was no written report of that incident.

On cross-examination, Godwin confirmed that he had received a 16% disability rating on his left shoulder from his 2012 injury and that he had received temporary disability payments through November 2014. He acknowledged that he originally reported that his 2014 injury happened on February 17, not March 17, and said, "I was

probably just confused about the dates." He also confirmed that he waited five or six weeks to go to the doctor for his knee injury, and when asked "How do we know something didn't happen to your knee in that five or six weeks?" Godwin responded, "I guess you'll just have to trust my word[.]" He also confirmed that he filed the claim on his knee on December 3, right after the temporary disability payments from his 2012 injury were stopped.

Billy Sawyer, the fleet manager at Garland, testified that he terminated Godwin's employment and told him to collect his personal belongings. Sawyer stated that he did not follow Godwin outside and that Godwin never reported an injury after he was terminated. Sawyer did not learn of any injury until December 2014.

Shana Settle, a supervisor at Garland, testified that she was present when Godwin was terminated and confirmed that he was told to collect his personal belongings and leave the property. She also confirmed that she did not watch him go to the truck and collect his things. She stated that she first heard about Godwin's knee injury on December 3, 2014, when she received a call from Garland's insurance adjuster.

In a written opinion filed 9 July 2015, the ALJ reviewed all of this testimony and the medical evidence and concluded that (1) Godwin was performing employment services when his alleged injury occurred, but (2) Godwin had failed to prove by a preponderance of the credible evidence that he sustained a compensable left knee injury arising out of and in the course of his employment. The ALJ stated, "I am of this persuasion, particularly when considering all of the inconsistencies and contradictions made by the claimant[.] . . . Given these circumstances, it would require conjecture and

speculation to conclude that the claimant's current left knee problems are causally related to his employment duties." The ALJ also specifically found that Godwin was not a credible witness.

Godwin appealed to the Commission, and Garland cross-appealed the finding that Godwin was performing employment services at the time of his alleged injury. In an opinion dated 31 March 2016, the Commission, in a 2–1 majority opinion, affirmed and adopted the ALJ's opinion as its own. Under Arkansas law, the Commission is permitted to adopt the ALJ's opinion. *SSI, Inc. v. Cates*, 2009 Ark. App. 763, 350 S.W.3d 421. In so doing, the Commission makes the ALJ's findings and conclusions the findings and conclusions of the Commission. *Id.* Therefore, for purposes of our review, we consider both the ALJ's opinion and the Commission's majority opinion. *Id.*

The Commission determines credibility, weighs the evidence, and resolves conflicts in medical testimony and evidence. *See Martin Charcoal, Inc. v. Britt*, 102 Ark. App. 252, 284 S.W.3d 91 (2008). We review the Commission's decision in the light most favorable to its findings and affirm when the decision is supported by substantial evidence. *Parker v. Atl. Research Corp.*, 87 Ark. App. 145, 189 S.W.3d 449 (2004). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether the appellate court might have reached a different result from the Commission, but whether reasonable minds could reach the result found by the Commission: if so, the appellate court must affirm. *Parker v. Comcast Cable Corp.*, 100 Ark. App. 400, 269 S.W.3d 391 (2007).

To prove the occurrence of a specific-incident compensable injury, the claimant must establish that the injury was one "arising out of and in the course of employment." Ark. Code Ann. § 11-9-102(4)(A)(i) (Repl. 2012). Godwin argues that there is no question that he has a knee injury and that when he sought medical treatment for his injury in April 2014, "the history of injury is exactly that which appellant has described all along." He further argues that there is no evidence that he was injured in any other way other than the way he described. He asserts, without citation to authority, that "the fact finder must determine that appellant was hurt in some way other than how he says." And because no alternative explanation for his injury was proven or even offered, the Commission was required to speculate to find that his claim was not compensable.

In response, Garland argues that credibility is determined exclusively by the Commission and that, in this case, the Commission concluded that Godwin "was not credible and was not truthful when explaining where his knee injury actually originated from." Garland explains that for an accident to be compensable, there must be a causal connection between the accident and a risk that is reasonably incident to the employment, and that connection cannot be supplied by speculation. *See Ark. Dep't of Correction v. Glover*, 35 Ark. App. 32, 812 S.W.2d 692 (1991). In other words, speculation cannot establish the existence of an injury, and without credible testimony from Godwin, the Commission would have to speculate to find that a compensable injury occurred.

Godwin insists that he has "provided a sensible and consistant [sic] history that is supplemented by the fact that (1) he is absolutely objectively injured and (2) there is no

other explanation offered as to what caused him to be objectively injured." Thus, the Commission speculated in finding his injury not compensable and should be reversed.

We affirm the Commission. As we stated earlier, the Commission determines credibility, weighs the evidence, and resolves conflicts in medical testimony and evidence. *See Martin Charcoal, Inc.*, *supra*. Viewing the Commission's decision in the light most favorable to its findings, we hold that the Commission's decision is supported by substantial evidence.

Affirmed.

VIRDEN and BROWN, JJ., agree.

*Gary Davis*, for appellant.

*Michael E. Ryburn*, for appellees.