

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-16-143

| | |
|---|---|
| BRIAN O. BIRTCHER<br>APPELLANT<br><br>V.<br><br>MENA WATER UTILITIES,<br>ARKANSAS MUNICIPAL LEAGUE,<br>AND DEATH & PERMANENT TOTAL<br>DISABILITY TRUST FUND<br>APPELLEES | Opinion Delivered: April 5, 2017<br><br>APPEAL FROM THE ARKANSAS<br>WORKERS' COMPENSATION<br>COMMISSION [NO. G305958]<br><br><br><br>AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Brian O. Birtcher sustained admittedly compensable injuries to his head and his left leg while working for appellee Mena Water Utilities on July 28, 2013. Mena Water Utilities covered the medical treatment associated with the injuries and accepted a thirty-three percent permanent anatomical impairment rating for neurologic impairments associated with traumatic dissection of the left vertebral artery and a stroke. Although Mena Water Utilities admitted that it was responsible for some degree of permanent partial wage-loss benefits, it controverted Mr. Birtcher's claim that he was permanently and totally disabled.

After a hearing, the Workers' Compensation Commission denied Mr. Birtcher's claim for permanent and total disability benefits. The Commission did, however, award fifty-percent wage-loss disability over and above Mr. Birtcher's permanent anatomical impairment rating. Mr. Birtcher now appeals, arguing that the Commission's decision

SLIP OPINION

denying his claim for permanent and total disability benefits was not supported by substantial evidence. We affirm.

Permanent total disability is defined by statute as the inability, because of compensable injury or occupational disease, to earn any meaningful wages in the same or other employment. Ark. Code Ann. § 11-9-519(e)(1) (Repl. 2012). The employee bears the burden of proving the inability to earn any meaningful wage. Ark. Code Ann. § 11-9-519(e)(2). In considering claims for permanent partial disability benefits in excess of the percentage of permanent physical impairment, the Commission may take into account such factors as the employee's age, education, work experience, and other matters reasonably expected to affect his or her future earning capacity. Ark. Code Ann. § 11-9-522(b)(1). The wage-loss factor is the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. *Thompson v. Mountain Home Good Samaritan Vill.*, 2014 Ark. App. 493, 442 S.W.3d 873.

Our court views the evidence in a light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *Nichols v. Micro Plastics, Inc.*, 2015 Ark. App. 134. Substantial evidence exists if reasonable minds could reach the Commission's conclusion. *Id.* When the Commission denies a claim because of the claimant's failure to meet his burden of proof, the substantial-evidence standard of review requires that we affirm the Commission's decision if it displays a substantial basis for the denial of relief. *Martin Charcoal, Inc. v. Britt*, 102 Ark. App. 252, 284 S.W.3d 91 (2008). It is the Commission's duty, not ours, to make credibility determinations, to weigh the evidence, and to resolve conflicts in the medical testimony. *Id.*

Mr. Birtcher testified that he was forty-two years old at the time of the hearing and that he lived in Rocky, Arkansas, which is about eight miles west of Mena. His past employment included working as a drilling rig operator, deputy sheriff, bouncer, and machine operator at a poultry plant. Mr. Birtcher began working on the sewer-maintenance crew for Mena Water Utilities in 2006.

While working for Mena Water Utilities on July 28, 2013, Mr. Birtcher was assaulted by a man and his wife while he was attempting to disconnect their water. According to Mr. Birtcher, the man's wife weighed 300 pounds and she kicked him in the head, stomped on his leg, jumped on his back, and jerked his head around.

Mr. Birtcher went to the emergency room that day and was diagnosed with a broken left leg. Mr. Birtcher was also experiencing dizziness, headaches, and nausea as a result of the attack, and he came under the care of a neurologist, Dr. Stephen F. Shafizadeh. Subsequent testing confirmed that Mr. Birtcher had suffered a left vertebral artery dissection and a brain stem stroke. Mr. Birtcher's problems included difficulty with swallowing, numbness in his extremities, and vertigo.

On October 9, 2013, Dr. Shafizadeh reported:

> With regard to [Mr. Birtcher] returning to work, I instructed him that he could return to work as long as work had limited risk. As such, I recommend to him to have a "desk job." *There were no limitations if he was to have a desk job at his same company that he worked at before.* (Emphasis added.)

On January 8, 2014, Dr. Shafizadeh reported:

> With regards to returning to work, I, again, reviewed with the patient with his representative in the room that I do not do disability assessments. In brief, however, I relayed to him that given his decreased sensation of the right hand, right leg, and alterations in vision, I do not recommend him to do any machinery or any driving at work or otherwise. *I also recommended to him that physically he could return to work as*

*long as it was a desk job and he was not asked to do work that would put him at harm if he fell or was involved in any machinery.* These were generalized recommendations, and I relayed to him that I do not do specific recommendations in this kind of setting as there are innumerable situations which could include or exclude the above recommendations. (Emphasis added.)

A return-to-work permit dated January 8, 2014, indicated that Mr. Birtcher could return to work with the restrictions, "no machinery, light duty, no driving." Mr. Birtcher subsequently returned to work for Mena Water Utilities at light duty.

On August 28, 2014, Dr. Scott W.F. Carle performed an independent medical examination of Mr. Birtcher. Dr. Carle assigned a thirty-three percent permanent partial impairment rating as a result of Mr. Birtcher's compensable neurologic impairments. With respect to Mr. Birtcher's ability to work, Dr. Carle gave the following assessment:

> The claimant has had specific direction not to engage in activity that is beyond a "desk job" by his attending neurosurgeon. *Subsequent to his current functional status pertaining to work ability and his apparent risk associated with engaging in activity, the following work class recommendations are made and should be considered permanent in duration.*
> The claimant would not be considered eligible for Commercial Vehicle Operation under the DOT due to his persistent symptoms of vertigo with a neurologic basis. Subsequent to that, he should also engage only in ground level work. He should not lift, push or pull beyond 20 pounds of force occasionally to move objects. He should not exceed 10 pounds of force on a frequent basis and no more than negligible force constantly. He should not operate dangerous machinery at work such as a backhoe or forklift.
> A job description is available for review. There exists documentation that the claimant has been trained to work as a billing clerk and other light duty office work. He will also be given the opportunity to go with contractors to identify meter locations. Duties for that will include "riding and communicating." *The claimant would appear to be able to do this job as described and would be of no direct threat of imminent harm to others or himself by engaging in this type of work activity.* (Emphasis added.)

Mr. Birtcher continued working for Mena Water Utilities at light duty.

Mr. Birtcher testified that, while he was working light duty for Mena Water Utilities, he worked an eight-hour day in the office. He stated that he did what was asked of him.

Roddy Strother, Mr. Birtcher's coworker, testified that he observed Mr. Birtcher in the workplace. Mr. Strother stated that, after Mr. Birtcher sustained his injuries, Mr. Birtcher worked at a slower pace and could not perform all of his former duties. Mr. Strother testified that Mr. Birtcher's light-duty jobs included cleaning, painting, and rearranging the inventory.

Larry Gross, the maintenance supervisor for Mena Water Utilities, testified that the sewer maintenance job required heavy labor including lifting as much as 50−100 pounds. Mr. Gross stated that when Mr. Birtcher was returned to light-duty work he could no longer do that type of work, so he would find things for Mr. Birtcher to do around the office. Mr. Gross testified that Mr. Birtcher was able to sweep, mop, and help with paperwork, and that Mr. Birtcher did a good job at what he was asked to do. However, Mr. Gross stated that working in the office was never meant to be a permanent solution for Mr. Birtcher. On October 1, 2014, Mena Water Utilities terminated Mr. Birtcher's employment, with the stated reason being that it no longer had a position for him within the permanent restrictions imposed by Dr. Carle.

On October 24, 2014, Mr. Birtcher met with a vocational-rehabilitation counselor, Heather Taylor, to complete a vocational-rehabilitation assessment. Ms. Taylor reported:

> Mr. Birtcher sustained several injuries as a result of his work accident. He has reached maximum medical improvement, and has been released to return to the workforce with permanent restrictions. Mr. Birtcher reported that he very much would like to return to the workforce as soon as possible, and stated he is open to trying just about any job he physically would be able to perform. Mr. Birtcher acquired a few skills during his work history, but many of the jobs he performed in the past are beyond his current permanent restrictions; therefore, he likely would not be able to pursue similar occupations. However, there likely are other jobs in his labor market area that he should be able to perform. Mr. Birtcher reported that he would be interested in job search assistance if that was available to him.

Ms. Taylor identified two potential jobs for Mr. Birtcher in Mena—one as a wireless sales representative and the other as a merchandiser for Frito Lay. She also identified numerous job openings in other locations in the area, including DeQueen, Waldron, and Poteau, Oklahoma. Among these jobs were an administrative assistant, business office representative, dispatcher, and registration clerk. Mr. Birtcher pursued some, but not all, of the jobs identified by Ms. Taylor, and he also looked for work on his own, but he had been unsuccessful in obtaining employment.

Ms. Taylor testified that she was not able to find many suitable jobs in Mena. Ms. Taylor further stated that, due to Mr. Birtcher's restrictions, he was going to have to find a job that he had not done before. She stated that Mena is a competitive market place and that almost anyone who applied for a job there would be more qualified than Mr. Birtcher because he lacks the skill sets that other applicants may have.

Mr. Birtcher stated that it was his understanding that he would be on blood thinners for the rest of his life and that if he overexerted himself it could result in sudden death. Mr. Birtcher stated that he had unsuccessfully looked for some less strenuous jobs in Mena. He explained that he did not apply for work in DeQueen, Waldron, or Poteau, because those towns are about an hour away from home and it did not make sense to drive that distance for a job that paid only eight to ten dollars an hour. Mr. Birtcher stated that in Mena, a town of only about 5000 people, "there is not a lot going on" and that work is difficult to find. Mr. Birtcher testified that he is able to drive, do household chores, and cook meals.

Mr. Birtcher's sole argument on appeal is that the Commission's decision denying his claim for permanent and total disability benefits was not supported by substantial evidence. Mr. Birtcher asserts that he has worked physically demanding jobs his entire work life, and that the undisputed evidence showed that he can no longer perform any of his previous occupations. Mr. Birtcher further asserts that he possesses only sixth-grade math ability and seventh-grade spelling ability, and that he also lacks computer skills, which makes him unqualified for a desk job. Given the limited employment opportunities in Mena, Mr. Birtcher contends that it was unrealistic to speculate that any employer there would hire him. Mr. Birtcher also asserts that, due to his vertigo and inability to drive long distances, he would be unable to drive to a job that is an hour from his home. Mr. Birtcher argues that, because he is no longer able to earn any meaningful wages as a result of his compensable injury, he should have been awarded permanent and total disability benefits.

The issue here is not whether the appellate court might have reached a different result from the Commission; if reasonable minds could reach the result found by the Commission, the appellate court must affirm the decision. *Kimbell v. Ass'n of Rehab Indus. & Bus. Companion Prop. & Cas.*, 366 Ark. 297, 235 S.W.3d 499 (2006). Where the Commission denies a claim because of the claimant's failure to meet his burden of proof, the substantial-evidence standard of review requires that we affirm if the Commission's decision displays a substantial basis for the denial of relief. *Id.*

We hold that the Commission's decision displays a substantial basis for denying Mr. Birtcher's claim for permanent and total disability benefits. As the Commission found in its decision, no physician in this case gave the opinion that Mr. Birtcher was permanently

and totally disabled. To the contrary, Dr. Shafizadeh returned Mr. Birtcher to light-duty work, recommending that Mr. Birtcher could return to work as long as it was a desk job and did not put him at risk of harm if he fell or was involved with machinery. Mr. Birtcher in fact returned to full-time light-duty work for Mena Water Utilities for a period of ten months, performing such tasks as sweeping, mopping, rearranging inventory, and helping with paperwork. Dr. Carle agreed that Mr. Birtcher could perform a light-duty job, reporting that Mr. Birtcher could engage in ground-level work that did not require him to lift, push, or pull more than twenty pounds, exceed ten pounds of force on a frequent basis, or operate dangerous machinery. Dr. Carle also reported that, although Mr. Birtcher should not drive commercially, he is able to drive a car.

Mr. Birtcher, now age forty-four, is relatively young, and he acknowledged in his testimony that he is able to drive, perform household chores, and cook for himself. Mr. Birtcher graduated from high school and attended one year of community college. A vocational-rehabilitation assessment showed that he has a sixth-grade math capability, seventh-grade spelling ability, ninth-grade word-reading ability, and above a twelfth-grade level of sentence comprehension. The vocational counselor, Ms. Taylor, identified numerous potential jobs for Mr. Birtcher in the area, and two potential jobs in Mena that were not physically demanding. Although Mr. Birtcher's work restrictions prohibited him from returning to his previous jobs, we hold on this record that the Commission did not err in concluding that Mr. Birtcher failed to prove the inability to earn *any* meaningful wages as a result of his compensable injury. Therefore, we affirm the Commission's finding

that Mr. Birtcher was entitled to fifty-percent wage loss but that he was not permanently and totally disabled.[1]

Finally, we acknowledge that, as part of Mr. Birtcher's argument, he urges this court to take this opportunity to clarify that a claimant's burden of proof on his inability to earn any meaningful wages in the same or other employment is limited to actual jobs in his own county or labor-market area. However, we observe that "permanent total disability" as defined by our legislature makes no provision for whether employment is available in any particular geographical area, but instead provides that the claimant must prove the inability to earn any meaningful wages because of the compensable injury. *See* Ark. Code Ann. § 11-9-519(e)(1). Moreover, pursuant to Ark. Code Ann. § 11-9-704(c)(3), we are required to construe the provisions of the Workers' Compensation Act strictly. The legislature expressed the "General Assembly's intent" in the Workers' Compensation Act of 1993 when it declared that, in the future, if "the scope of the workers' compensation statutes need to be liberalized, broadened, or narrowed, those things shall be addressed by the General Assembly and should not be done by administrative law judges, the Workers' Compensation Commission, or the courts." Ark. Code Ann. § 11-9-1001.

---

[1]In Mr. Birtcher's brief, he claims that this case is "strikingly similar" to *McDonald v. Batesville Poultry Equipment*, 90 Ark. App. 435, 206 S.W.3d 908 (2005), which was a case where we reversed the Commission's finding that the claimant was not permanently and totally disabled. However, we observe that each of these cases must be decided on its own facts and that there are distinguishing factors between *McDonald* and the present case. In *McDonald*, the claimant had a fifty-percent permanent impairment (as opposed to a thirty-three percent impairment), was illiterate, had a learning disorder, had borderline intellectual functioning, and suffered from severe anxiety. Our holding in *McDonald* does not control the outcome of this appeal.

SLIP OPINION

Even assuming, *arguendo*, that a claimant's choice of residence could be considered in assessing total disability, the proof in this case showed that there were light-duty jobs available in Mr. Birtcher's area. In addition to potential employment in Mena, job openings in his area were identified in Waldron, Arkansas, which is about forty-three miles from Mr. Birtcher's home; DeQueen, Arkansas, which is about fifty-three miles away; and Poteau, Oklahoma, which is about fifty-five miles away. Although Mr. Birtcher claims on appeal that he could not pursue the jobs identified outside of Mena because of his limited driving abilities, this was belied by his testimony. Mr. Birtcher testified that he is able to drive around as he desires, and that he had driven 145 miles to Fayetteville, Arkansas, to meet with his lawyer and ninety miles to Fort Smith, Arkansas, for the hearing. Mr. Birtcher's sole reason for not applying for any jobs outside of Mena was that, in his opinion, it did not make sense economically to drive that distance for those jobs. We conclude that, even limiting the scope to appellant's area, there was substantial evidence that Mr. Birtcher failed to prove the inability to earn meaningful wages.

Affirmed.

GLOVER and BROWN, JJ., agree.

*Hatfield Law Firm*, by: *Jason M. Hatfield*; and *Cullen & Co., PLLC*, by: *Tim J. Cullen*, for appellant.

*Katie Bodenhamer*, for appellees.