BRANDON J. HARRISON, Judge
Connie Burke appeals the opinion of the Arkansas Workers' Compensation Commission (Commission) that affirmed and adopted the opinion of the administrative law judge (ALJ) finding that she had not proved entitlement to benefits under Ark. Code Ann. § 11-9-505(a) (Repl. 2012). We affirm.
Burke, an employee of the Arkansas Department of Correction (ADC), sustained compensable injuries to her knees and spine on 28 February 2015 after she fell while going up a flight of stairs. Burke was released by Dr. Justin Seale for her spinal injury on 19 August 2015 and released by Dr. Eric Gordon for her knee injuries on 1 September 2015. ADC paid all appropriate medical and related expenses and temporary total disability (TTD) benefits through 1 September 2015.
In January 2017, the ALJ convened a hearing to determine Burke's entitlement to benefits under Ark. Code Ann. § 11-9-505(a), which provides:
Any employer who without reasonable cause refuses to return an employee who is injured in the course of employment to work, where suitable employment is available within the employee's physical and mental limitations, upon order of the Workers' Compensation Commission, and in addition to other benefits, shall *747 be liable to pay to the employee the difference between benefits received and the average weekly wages lost during the period of the refusal, for a period not exceeding one (1) year.
Before § 11-9-505(a) applies, the employee must prove by a preponderance of the evidence that (1) she sustained a compensable injury; (2) suitable employment which is within her physical and mental limitations is available with the employer; (3) the employer has refused to return her to work; and (4) the employer's refusal to return her to work is without reasonable cause. Clayton Kidd Logging Co. v. McGee , 77 Ark. App. 226, 72 S.W.3d 557 (2002). Burke contended that she was entitled to benefits under this statute as of 2 September 2015.
Documentary evidence introduced at the hearing showed that, on 19 May 2015, Kimyata Randall, a human resources assistant at ADC, sent an email to her supervisors that stated the following: "Be advised that Connie Burke exhausts her leave on 5-21-2015. I have spoken with her and she has advised that she will not be able to return into security." A second email from Randall, dated 2 June 2015, stated:
Please be advised that I spoke with Connie Burke today. She has again advised that she will not be returning. She did confirm that she received the Essential Job function form that you requested that I send to her. However, she has declined to return it and has asked that we go ahead and terminate her.
Three days later, on June 5, ADC's warden sent Burke a termination letter that stated the following:
As you know, the Family Medical and Leave Act allow[s] "eligible" employees to take job protected, unpaid leave or to substitute appropriate leave for up to a total of 12 weeks. Because you were placed on leave without pay effective 5/12/2015, [you have] exhausted your 12 weeks of FMLA effective June 2, 2015 [and] you no longer have the umbrella of job protection or restoration as defined by FMLA.
In view of the aforementioned information, I am advising you that your employment with the Arkansas Department of Correction has been terminated effective 6/6/2015.
Upon recovery and being able to perform all the essential job functions of your present position (Correctional Officer) or any position that you apply for and have no other disqualifying factors, you will be considered for rehire.
Burke testified and confirmed that when she was terminated, she was still under her doctors' care and under restrictions from work. Burke did not recall ever having a conversation, by email or otherwise, with Kimyata Randall. She also agreed that after she was released by her doctors to return to work, she was not contacted by ADC and asked to return to work. She explained that she had remained off work since being released by her physicians. She also said that she had looked on the Arkansas state-jobs website since then and that it appeared that there were jobs available within her restrictions.
On cross-examination, Burke said that she knew she could not return to security work after her injury. She denied discussing the status of her employment with anyone at ADC before receiving the termination letter. Counsel next asked her about the termination letter:
COUNSEL : I wanted to ask you, in this letter the next to last paragraph, I wanted to ask you if you remember reading this, but it talks about upon your recovery and being able to perform essential job functions of your present position or any position that *748 you apply for, you could be considered for rehire. Did you read that? BURKE : Yes, sir.
COUNSEL : Okay. And did you understand that-when you read that in this termination letter, can I ask you what did you understand that to mean for you?
BURKE : What do you mean, what did I-
COUNSEL : Well, that paragraph about your eligibility for rehire at ADC, when you read that paragraph, what did you understand that to mean as far as you're concerned?
BURKE : I mean, that I couldn't do security, but they should have offered me something in the office or something. That's what they usually do.
COUNSEL : So your understanding was if you couldn't go back to security work, that they should offer you some other kind of work, correct?
BURKE : Yes, sir.
COUNSEL : And did you ever discuss that with anybody at ADC, that you can remember, about some other kind of work after you got this termination letter?
BURKE : No, sir.
COUNSEL : So was it your understanding that you could wait and let them contact you about coming back to work?
BURKE : Yes, sir.
Burke denied ever receiving an essential-job-function form. She also confirmed that after she stopped receiving workers'-compensation benefits in September 2015, she began receiving unemployment benefits. She agreed that she had never contacted ADC about going back to work or reapplying for a job.
Russell Barker, a human-resources administrator at ADC, confirmed that he had asked Randall to send Burke an "essential job function," which is a form that must be completed by an employee's physician and that informs the employer whether the employee's disability is permanent or temporary. He also confirmed that since Burke was terminated, she had not applied for any positions at ADC.
Randall testified that she had communicated with Burke through email correspondence and telephone calls while Burke was out on family medical leave. She confirmed that Burke said she was not going to return the essential-job-function form. According to Randall, she advised Burke that there was nothing else the ADC could do for her without the form, and Burke said, "Go ahead and terminate me, I'm not coming back." Randall explained that, after termination, it would be up to the employee to ask about coming back to work.
On redirect examination, Burke again denied ever speaking to Randall or ever telling her or anyone else at ADC that she wanted to be terminated. She said that she had never received the essential-job-function form and that she had not declined to return any paperwork to ADC. On recross, she acknowledged that she had received FMLA paperwork from ADC, which she gave to her doctor, and that she did not know if the essential-job-function form was included in that paperwork. When asked by the ALJ if she could testify whether there was any work within her restrictions available while she was still under her doctors' care, Burke stated, "I can't say under oath that they had positions at that time."
At the close of the hearing, the ALJ encouraged the parties to submit letter briefs "as to how the facts in this instant case apply with regard to entitlement to 505 benefits." In its letter brief, ADC argued that Burke had not met her burden of proof for entitlement to benefits under the statute and that "[t]he facts of this *749 case do not describe a situation where the employer has refused to return the injured employee to work." On the contrary, ADC argued, "it was the claimant's choice not to return to her security position, to request that her employment be terminated, and it was her choice not to pursue further employment with the respondent-employer."
In Burke's letter brief, she again denied ever requesting to be terminated and argued that this case was "a virtual mirror image" of another recent workers'-compensation case, Jennings v. Arkansas Department of Correction , Claim No. G504374, 2016 WL 6584750 (Ark. Workers' Comp. Comm'n, Oct. 25, 2016). In that case, Jennings, a correctional officer, sustained a compensable injury to her knee, and ADC paid for medical treatment and TTD benefits. Jennings returned to restricted desk work while still under her doctor's care and performed those duties for a month, but was then rotated to a patrol position that she was unable to perform. Her doctor prescribed "sitting duty" at work, but ADC told Jennings that there were no light-duty positions available and terminated her employment. Jennings was told that once she recovered, she could reapply and would be considered for rehire. After she was released to work without restrictions, she demanded that she be reinstated to her previous position, but ADC refused to reinstate her. Under those facts, the Commission found that Jennings was entitled to benefits pursuant to § 11-9-505. Burke argued that, in both cases, "the employer had suitable work available within the employee's restrictions and yet the employer refused to return the injured employee to work."
In a March 2017 opinion, the ALJ found that Burke had failed to prove that she is entitled to additional compensation pursuant to Ark. Code Ann. § 11-9-505(a). The ALJ stated that the record was "replete with inconsistencies and contradictions" and that Burke's claim "turns almost entirely upon the claimant's credibility." The ALJ noted that Burke had initially claimed that she reported back to work, could not pass the employment physical, and was not offered any light-duty employment, at which time she requested additional TTD benefits; at the hearing, however, Burke dismissed any claim for additional TTD benefits and instead claimed entitlement to benefits under § 11-9-505. The ALJ found that Burke had proved that she sustained a compensable injury, but she had failed to prove that there was suitable employment within her physical and mental limitations available with the employer, that the employer had refused to return her to work, and that the employer's refusal to return her to work was without reasonable cause. The ALJ concluded that Burke was not credible:
The claimant offered no credible evidence whatsoever that employment, suitable to her physical and mental limitations, was available with the employer. In fact, the claimant made no effort whatsoever at returning to work for the employer herein. The employer did not refuse to return the claimant to work. In addition, although the claimant was released to return to work without restrictions, the credible evidence reflects that the claimant had either no intention or desire to return to work as a correctional officer.
....
In claimant's brief, submitted subsequent to the hearing, the claimant argues that this case is a virtual image of Jennings v. Arkansas Department of Correction , AWCC # G504734, Full Commission Opinion filed October 25, 2016. In my opinion, the claims are clearly distinguishable. More specifically, *750 in the Jennings claim, there was credible testimony that the claimant performed a number of jobs with the employer, and, that there were jobs available within her physical restrictions. In the instant claim, there is no such credible testimony, and, further, the claimant was released without any physical restrictions and made no credible effort to return to work.
....
The claimant acknowledged receiving a termination notice while continuing to receive temporary total disability with instructions that upon recovery, and being able to perform all of her essential job functions, she could apply for her prior position or other positions within the Agency and the claimant made no efforts whatsoever to return to work for the employer herein. Rather than reapply for any job with the employer, the claimant applied for and received unemployment compensation. In my opinion, the claimant has failed to establish that she is entitled to benefits pursuant to Ark. Code Ann. § 11-9-505.
Burke appealed to the full Commission, and in an August 2017 opinion, the Commission affirmed and adopted the ALJ's opinion as its own. Under Arkansas law, the Commission is permitted to adopt the ALJ's opinion. SSI, Inc. v. Cates , 2009 Ark. App. 763, 350 S.W.3d 421. In so doing, the Commission makes the ALJ's findings and conclusions the findings and conclusions of the Commission. Id. Therefore, for purposes of our review, we consider both the ALJ's opinion and the Commission's majority opinion. Id. Burke has now timely appealed to this court.
We review the Commission's decision in the light most favorable to its findings and affirm when the decision is supported by substantial evidence. Parker v. Atl. Research Corp. , 87 Ark. App. 145, 189 S.W.3d 449 (2004). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. Id. The issue is not whether this court might have reached a different result from the Commission, but whether reasonable minds could reach the Commission's result; if so, this court must affirm. Parker v. Comcast Cable Corp. , 100 Ark. App. 400, 269 S.W.3d 391 (2007).
To reiterate, our case law provides that before Ark. Code Ann. § 11-9-505(a) applies, the employee must prove by a preponderance of the evidence that (1) she sustained a compensable injury; (2) suitable employment which is within her physical and mental limitations is available with the employer; (3) the employer has refused to return her to work; and (4) the employer's refusal to return her to work is without reasonable cause. Clayton Kidd Logging Co. , supra. The Commission found that Burke had met the first requirement but failed to prove that there was suitable employment within her physical and mental limitations available with the employer, that the employer had refused to return her to work, and that the employer's refusal to return her to work was without reasonable cause.
On appeal, Burke contends that "the facts pertinent to a 505 determination are not in dispute" and that "[t]here were jobs available within her restrictions and the Respondents did not offer her employment after she was released to full duty." She also again asserts that the facts of this case are virtually identical to Jennings , supra. She argues that, like Jennings, she was terminated "while she was on light duty and was never offered any work following her full-duty release."
Burke's argument falters given the Commission's findings that she was not a credible witness and that there was no credible testimony that there were jobs *751 available within her physical restrictions. The Commission also found that Burke was released without any physical restrictions and made no credible effort to return to work. Without any attempt to return to work, it cannot be said that ADC refused to return her to work. This highlights the primary difference between this case and Jennings : in Jennings , the claimant requested to return to work and her employer denied her request. See Ark. Dep't of Corr. v. Jennings , 2017 Ark. App. 446, 526 S.W.3d 924. Here, the Commission found that no credible evidence established that Burke requested or attempted to return to work.
The Commission determines credibility, weighs the evidence, and resolves conflicts. See Godwin v. Garland Cty. Landfill , 2016 Ark. App. 498, 504 S.W.3d 660. It is not required to believe the testimony of any witness but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief. Sandeford v. United Parcel Serv., Inc. , 2014 Ark. App. 228, 2014 WL 1396660. This court does not weigh the evidence and judge the credibility of the witnesses. Id. Considering this standard, we hold that the Commission's decision that Burke failed to prove an entitlement to benefits under § 11-9-505(a) is supported by substantial evidence and affirm.
Affirmed.
Gruber, C.J., and Vaught, J., agree.