Sarah PARKER *v.* ATLANTIC RESEARCH CORP.
Insurance Company of the State of Pennsylvania

CA 03-1362 189 S.W.3d 449

Court of Appeals of Arkansas
Division I
Opinion delivered June 30, 2004

148

*Rieves, Rubens & Mayton*, by: *Eric Newkirk*, for appellant.

*Philip M. Wilson*, for appellee.

ROBERT J. GLADWIN, Judge. This is an appeal from the Arkansas Workers' Compensation Commission. Appellant sought medical benefits for a gradual onset neck injury, contending that a work-related rapid repetitive motion injury caused an aggravation of her preexisting asymptomatic degenerative cervical disc disease. Appellees controverted the payment of all benefits relative to appellant's neck injury. The administrative law judge (ALJ) found in favor of appellant and awarded benefits. The Commission reversed the decision of the ALJ, finding that, as a matter of law, an injured worker with a work-related aggravation of preexisting disc abnormalities cannot meet the major cause requirement of Ark. Code Ann. § 11-9-102(4)(E)(ii) (Repl. 2002) by establishing that the disc

abnormalities were asymptomatic for at least a significant period before a work-related injury but became symptomatic when work conditions gradually aggravated the previously asymptomatic disc abnormalities. We disagree with this statement in general and with its application to the situation herein, that appellant failed to establish that the rapid repetitive motion aggravated her preexisting condition and was the major cause of her disability and her need for treatment. Accordingly, we reverse and remand for proceedings not inconsistent with this opinion.

In June of 1998, appellant began working for appellee Atlantic Research Corporation, which manufactures defense products and parts for automobile air bags. In May of 1999, appellant was transferred to a production line in the "pack out" division, where her duties involved packing parts for air bags. The Commission noted that while it was difficult to determine the exact sequence of events involved in appellant's work routine, it appeared from the testimony that appellant would pick up small parts coming down a conveyor belt, inspect the parts, and then put each part in a box. Each box contained ninety-six parts, and it took appellant approximately fifteen minutes to fill each box. Appellant's supervisor testified that the motions involved quick and fast movements of the head and neck, requiring appellant to look to one side to find an appropriate part as it came down the belt, inspect the part, and then look in the other direction to place the part into the appropriate slot in the box.

Appellant testified that in May of 1999, after she transferred to the "pack out" division, she began to experience pain in her arms, right shoulder, hands, and neck. She reported these problems to her supervisor and stated that she needed medical treatment. With the knowledge of her supervisor, appellant began seeing her family doctor for medical treatment for these problems.

Appellant saw her family doctor, Dr. John Sarnicki, on June 8, 1999. After appellees were notified, they referred appellant to their medical provider, Dr. Judson Hout. Dr. Hout referred her to Dr. Gordon Gibson, a neurologist. Eventually Dr. Gibson referred appellant to Dr. Scott Schlesinger, a neurosurgeon, who recommended conservative management of her complaints.

Following her evaluation by Dr. Schlesinger, appellant sought a second opinion. On October 11, 1999, she was evaluated by Dr. Wilbur Giles, a neurosurgeon. Dr. Giles diagnosed appellant with "C6-7 cervical radicular syndrome." Following a

myelogram-CT, Dr. Giles diagnosed "cervical stenosis and cervical spondylosis at C6-7." He noted that based on the CT, appellant had "significant findings compatible with her neck, shoulder, and arm pain and possibly could benefit from an anterior cervical diskectomy and arthrodesis at the C6-7 level using donor bone." On December 3, 1999, appellant underwent this surgical procedure.

When appellant sought medical benefits related to the treatment of her neck condition, appellees denied the compensability of her neck complaint and liability for any related workers' compensation benefits. The Commission reversed the ALJ award for benefits, and held that appellant failed to prove that the aggravation was the major cause of her disability, reasoning that because the disc abnormalities observed on the MRI, myelogram, and post-myelogram CT all preexisted the work-related aggravation, appellant could not, as a matter of law, establish the aggravation as the major cause of her disability. Appellant argues on appeal that there was no substantial basis for the Commission's decision to deny benefits.

The standard of review in workers' compensation cases is well settled. When reviewing a decision of the Arkansas Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission and affirm that decision if it is supported by substantial evidence. *Cooper Tire & Rubber Co. v. Angell*, 75 Ark. App. 325, 58 S.W.3d 396 (2001). Substantial evidence is that relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Wheeler Constr. Co. v. Armstrong*, 73 Ark. App. 146, 41 S.W.3d 822 (2001). The issue is not whether this court might have reached a different result from the Commission; the Commission's decision should not be reversed unless it is clear that fair-minded persons could not have reached the same conclusions if presented with the same facts. *Horticare Landscape Management v. McDonald*, 80 Ark. App. 45, 89 S.W.3d 375 (2002); *Wheeler Constr., supra*. When a claim is denied because a claimant failed to show entitlement to compensation by a preponderance of the evidence, the substantial-evidence standard of review requires that we affirm if a substantial basis for the denial of relief is displayed by the Commission's opinion. *Marshall v. Madison County*, 81 Ark. App. 57, 98 S.W.3d 452 (2003).

■ ■ In workers' compensation law, an employer takes the employee as he finds him, and employment circumstances that aggravate preexisting conditions are compensable. *Heritage Baptist Temple v. Robison*, 82 Ark. App. 460, 120 S.W.3d 150 (2003). An aggravation of a preexisting noncompensable condition by a compensable injury is, itself, compensable. *Oliver v. Guardsmark*, 68 Ark. App. 24, 3 S.W.3d 336 (1999). An aggravation is a new injury resulting from an independent incident. *Crudup v. Regal Ware, Inc.*, 341 Ark. 804, 20 S.W.3d 900 (2000). An aggravation, being a new injury with an independent cause, must meet the definition of a compensable injury in order to establish compensability for the aggravation. *Farmland Ins. Co. v. DuBois*, 54 Ark. App. 141, 923 S.W.2d 883 (1996).

■ If the aggravation/new injury is an accidental injury, it must meet the following criteria to establish compensability: it must be (1) an independent incident; (2) work-related; (3) caused by a specific incident identifiable by a time and place of occurrence. *See* Ark. Code Ann. § 11-9-102(4)(A)(i) (Repl. 2002); *Farmland Ins. Co. v. DuBois, supra.* An injury does not have to be accidental in order to qualify as an aggravation/new injury; it must, however, fall within one of the definitions of a compensable injury as set forth in Ark. Code Ann. § 11-9-102(4)(A).

■ Where, as in the case before us, a rapid repetitive motion injury is argued to be an aggravation of a preexisting condition, the claimant must prove by a preponderance of the evidence that the injury: (1) arose out of and in the course of her employment; (2) caused internal or external physical harm to the body requiring medical services; (3) was caused by rapid repetitive motion; (4) was the major cause of the disability or need for treatment; (5) was established by medical evidence supported by objective findings. *See* Ark. Code Ann. § 11-9-102(4)(A) and (E) (Repl. 2002); *High Capacity Prods. v. Moore*, 61 Ark. App. 1, 962 S.W.2d 831 (1998). *See also Tyson Foods, Inc. v. Griffin*, 61 Ark. App. 222, 966 S.W.2d 914 (1998) (affirming the Commission's finding that the claimant's employment activities in the form of rapid repetitive movement had aggravated his degenerative osteoarthritis in the area of his hands and wrists, and that his conditions of bilateral carpal tunnel syndrome and aggravation of his preexisting degenerative arthritis constituted the major cause of his need for ongoing medical treatment).

██ The Commission specifically found that appellant had satisfied the objective medical findings requirement, noting the presence of a muscle spasm for which Valium was prescribed. The record also reveals documentation of hand and finger swelling, and a trip to the emergency room occasioned by appellant being unable to move her head. In *Estridge v. Waste Management*, 343 Ark. 276, 33 S.W.3d 167 (2000), our supreme court held that muscle spasms can constitute objective medical findings to support compensability. In the case at bar, there is written documentation of the presence of a muscle spasm and the swelling found in appellant's hands and fingers. There was, therefore, substantial evidence to support the finding of the Commission that appellant had satisfied the requirement that an injury be established by medical evidence supported by objective findings. Regarding the requirement of rapid repetitive motion, the Commission considered the testimony of appellant's supervisor and concluded that if appellant inspected approximately 6.5 parts per minute (96 parts every 15 minutes), and made two neck movements per part, appellant would engage in thirteen neck movements per minute. There was substantial evidence to support the Commission's finding that the rapid repetitive motion requirement was satisfied.

In *High Capacity Products, supra*, the claimant used an air gun to assemble blocks, with a quota goal of 1,000 units per day. She would hold the parts of the unit with her left hand and work the air gun with her right hand to attach two nuts to each block, averaging attachment of one nut every fifteen seconds. Her job required three maneuvers to be repeated in succession all day: assembling the separate parts, using the air-compressed equipment to attach the parts together with nuts, and throwing the units into a box.

█ Citing our decision in *High Capacity Products, supra*, the Commission in the instant case found that appellant's job duties fell within the meaning of rapid repetitive motion. Considering the multiple job tasks that appellant performed at high volume with quick and fast movements and the repetitive nature of such movements over the course of a sometimes ten-to-twelve hour shift, six to seven days a week, there was substantial evidence to support the Commission's finding that appellant's job duties required rapid repetitive motion.

Even though the Commission found that appellant had satisfied her burden of proof as to objective medical findings and rapid repetitive motion, it nonetheless declined to award benefits.

The Commission reasoned that because all of the disc abnormalities that showed up on the various studies preexisted the work-related aggravation, appellant could not establish, within the meaning of Ark. Code Ann. § 11-9-102(4)(E), that a work-related aggravation injury was the major cause of a disability or need for treatment simply by establishing that the preexisting condition was asymptomatic prior to becoming inflamed by the work activity.

■ We first disagree with this statement because it is inaccurate as applied to this situation. Appellant did not merely establish that her preexisting condition was asymptomatic prior to becoming inflamed by work; she introduced objective medical findings, as discussed above, to substantiate her claim of an aggravation/new injury.

■ Secondly, we disagree with the Commission's finding that "major cause" cannot be established in a situation in which a claimant was symptom-free prior to the work-related aggravation of a preexisting condition. A claimant is required to prove that the work-related injury is the major cause of the disability or need for treatment. But for the work-related injury in this case, there would have been no disability or need for treatment. Appellant's doctor testified within a reasonable degree of medical certainty that the work-related aggravation/new injury was the major cause of appellant's disability and need for treatment.

In his deposition on February 4, 2002, Dr. Giles testified that he believed that appellant had degenerative arthritic disease in her neck prior to her employment, but that if she had no symptoms prior to the employment, as she stated, then "the only way that her employment could have hurt her from that is if her neck was used in such form on a repeated basis that she made the degenerative disk inflammatory. Then it would have become inflammatory as a result of what she was doing, although it preexisted her employment."

The Commission interpreted Dr. Giles' testimony and written opinion report to conclude that appellant's previously asymptomatic neck abnormalities became inflamed/symptomatic as a result of her job duties. The Commission further found:

> Based on the fact that the claimant's neck was asymptomatic prior to the new job duties in 1999, and in light of the temporal relationship between the start of the new job duties and the beginning of her symptoms, Dr. Giles has concluded that the

claimant's work-related aggravation of a preexisting neck condition was the major cause of the surgical treatment that Dr. Giles performed. On the other hand, Dr. Giles has also testified that all of the disk abnormalities observed on MRI, myelogram, and post-myelogram CT, all preexisted the claimant's work-related aggravation.

The Commission also noted that the facts that formed the basis of Dr. Giles' opinion were not in dispute.

 Although the Workers' Compensation Act must be strictly construed, even a strict construction of statutes requires that they be construed in their entirety, with each subsection relating to the same subject to be read in a harmonious manner. *Farmers Cooperative v. Biles*, 77 Ark. App. 1, 69 S.W.3d 899 (2002). Furthermore, construction of the Workers' Compensation Act must be done in light of the express purpose of that legislation, which is to timely pay temporary and permanent disability benefits to all legitimately injured workers who suffer an injury or disease arising out of and in the course of their employment, to pay reasonable and necessary medical expenses resulting therefrom, and then to return the worker to the work force. Ark. Code Ann. § 11-9-101(b) (Repl. 1996); *Farmers Cooperative, supra.*

 When reviewing the Commission's interpretation and application of its rules, we give the Commission's interpretation great weight; however, if an administrative agency's interpretation of its own rules is irreconcilably contrary to the plain meaning of the regulation itself, it may be rejected by the courts. *Death & Perm. Total Disab. Trust Fund v. Brewer*, 76 Ark. App. 348, 65 S.W.3d 463 (2002). An administrative agency's interpretation of a statute or its own rules will not be overturned unless it is clearly wrong. *Id.*

 In consideration of the above standard and the purposes of the Workers' Compensation Act, we hold the Commission was clearly wrong in its decision that the "major cause" requirement of Ark. Code Ann. § 11-9-102(4)(E) categorically cannot be established by a showing that an asymptomatic preexisting condition became symptomatic, and thus required treatment, due to a work-related aggravation of that condition. All the requirements discussed herein were satisfied by appellant, and there was no substantial basis for the denial of relief. Accordingly, we reverse and remand.

Reversed and remanded.

BIRD and GRIFFEN, JJ., agree.