

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-17-93

|  |  |
|---|---|
| RICHARD G. JOHNSON<br>APPELLANT<br><br>V.<br><br>PAM TRANSPORT, INC., AND ZURICH<br>AMERICAN INSURANCE COMPANY<br>APPELLEES | **Opinion Delivered** October 4, 2017<br><br>APPEAL FROM THE ARKANSAS<br>WORKERS' COMPENSATION<br>COMMISSION<br>[NO. G408922]<br><br><br>AFFIRMED |

## LARRY D. VAUGHT, Judge

Richard G. Johnson appeals the Arkansas Workers' Compensation Commission's (Commission) opinion entered on October 12, 2016, denying compensability of his claim. On appeal, Johnson argues that the Commission failed to adequately consider the medical records that identify objective findings supporting his compensable injuries and that the Commission's conclusions about his credibility are not supported by the record and should not act as a bar to benefits. We affirm.

At the hearing before the administrative law judge (ALJ), Johnson testified that after successful careers as a plaintiff's trial lawyer[1] and a businessman,[2] he decided "truck driving

---

[1]Johnson said that he held three undergraduate degrees from the University of Pennsylvania and a doctoral degree from William and Mary Law School. He said he earned $250,000+ per year as a lawyer.

[2]Johnson testified that he earned $400,000–$500,000 a year from his ownership of up to twenty-four pizza restaurants.

might be fun." He applied for work at PAM Transport, Inc. (PAM Transport), in January 2014 and was later hired. Johnson said that on June 15, 2014, he was asleep in the cabin of his truck when his codriver suddenly stopped, causing Johnson to be thrown from the cabin into the dashboard and windshield. He stated that he immediately reported the incident to PAM Transport via an electronic computer system in the truck. Although he testified that he was severely injured because of the incident—suffering injuries to his neck, back, left shoulder, left elbow, head, and hip—he reported to PAM Transport that he suffered only "minor cuts, scrapes, and bruises" and that he did not need medical attention. He explained that he did not understand the extent of his injuries at that time because he had suffered a concussion as a result of the incident. Johnson said that he continued driving the truck as scheduled, traveling to New York and then to Ohio. He got a ride home to Pennsylvania with his codriver. Johnson continued to work at PAM Transport until August 15, 2014.

On July 7, 2014, Johnson sought treatment from his chiropractor, Dr. Eric Segal.[3] At this visit, Johnson complained of neck and low-back pain that he claimed had been caused by the June 15 incident. Johnson testified that PAM Transport sent him to Dr. John Metcalf on August 27, 2014. After the examination, Dr. Metcalf concluded that Johnson suffered from "chronic cervical/trapezius pain (unknown etiology)" and that his "[s]ubjective complaints seem to outweigh objective findings." Dr. Metcalf further stated that "there are some questions concerning the extent of the patient's complaints . . . . When questioned why he was

---

[3]Dr. Segal had been treating Johnson since April 2011 for neck pain, low-back pain, and migraines/headaches.

using a cane, he stated he was using it for fun." Dr. Metcalf opined that Johnson could return to full-duty work.

Johnson testified that he was having trouble walking, he could not hold things, he could not get out of bed, and he was disabled. He testified that he tried to return to Dr. Metcalf for treatment, but his office would not return his call. Therefore, Johnson sought treatment from several other providers, including Dr. Segal, Dr. Robert Liss (orthopedic), Dr. Betty Liu (physical medicine and rehabilitation), and Dr. David Lesondak (integrative medicine). Johnson testified that Dr. Lesondak's treatment, after about a year and a half, greatly improved his condition and that he was "pretty well back to normal now."

Johnson stated that before the incident giving rise to this claim he was in very good condition and that he had passed a physical to get his commercial driver's license. But he admitted that in the past, he had suffered from headaches and minor neck problems; he had seizures; and he had been hit in the head by a car door and he hit his head after he slipped and fell on ice. He said that as part of his PAM Transport application process, he was required to complete a form regarding his past medical history and that he was truthful in filling out the form. On the document, he was asked whether he had had any illness or injury in the past five years, to which he answered yes and explained that he had intestinal issues; he denied having had head injuries, seizures, spinal injury or disease, and chronic low-back pain. He said that he answered the way he did because he thought the form wanted to know about his current situation.

Kathy Snodgrass, PAM Transport's fleet manager, testified that on July 12, 2014, approximately a month after Johnson's incident in the truck and five days after Johnson had

been treated by Dr. Segal, she contacted him concerning his ninety-day evaluation. Johnson advised Snodgrass that he had been injured as a result of the incident but that he was okay. He told Snodgrass that he was very happy with PAM Transport and that it took very good care of him. Snodgrass said that Johnson did not mention that he had received treatment from Dr. Segal five days prior.

Leatrice Wallace, PAM Transport's occupations-injury manager, testified that Johnson contacted her on August 20, 2014, and reported that he had sustained injuries because of the June 15, 2014 incident. Wallace arranged for Johnson to see Dr. Metcalf on August 27, 2014. Wallace testified that PAM Transport controverted Johnson's claim after she reviewed Dr. Metcalf's report that identified no objective findings in support of new injuries and that returned Johnson to work at full duty.

Janice Brown, the medical-compliance manager at PAM Transport, testified that Johnson took the Department of Transportation (DOT) medical examination on January 29, 2014. She stated that the form asks for medical information going back five years and that applicants are required to provide truthful information. She said that on that the paperwork, Johnson failed to disclose his history of seizures, his prior head injuries, or his chronic neck and low-back issues. Brown stated that she believed that Johnson provided false information on the examination and that had PAM Transport had known of his prior medical history, it would not have allowed him to drive a truck. Based on this evidence, PAM Transport raised the *Shippers* defense.[4]

---

[4]In *Shippers Transport of Georgia v. Stepp*, our supreme court held that an employee may be precluded from benefits under the Workmen's Compensation Act for an otherwise compensable injury if it is shown that the employee knowingly and willfully made a false

In a written opinion filed on February 17, 2016, the ALJ reviewed the testimony and the medical evidence and concluded that Johnson "failed to meet his burden of proving by a preponderance of the evidence that he suffered compensable injuries on June 15, 2014." The ALJ found that Johnson's testimony relating his complaints to the June 15, 2014 incident lacked credibility because (1) he advised Snodgrass less than a month after the incident that he was okay and that he was impressed with the way PAM Transport handled the situation; (2) he continued to work for PAM Transport until August 15, 2014, and did not request medical treatment from PAM Transport until August 24, 2014; (3) he had a history of chronic neck and back complaints dating back to 2011, along with a history of recurrent severe headaches/migraines dating back to 2010, and he failed to list his complete medical history on the DOT examination; and (4) he was a very educated, sophisticated individual who should have been aware of the questions being asked on the DOT document. The ALJ further found that if Johnson had been credible, he failed to offer medical evidence supported by objective findings establishing an injury. The ALJ found that the only objective findings after June 15 were the same objective findings that existed before June 15.

Johnson appealed the ALJ decision to the Commission. The Commission affirmed and adopted the ALJ's opinion. This appeal followed.

When reviewing a decision of the Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission and affirm that decision if it is supported by substantial evidence. *Parker v. Atl. Research Corp.*,

---

representation as to his physical condition; the employer relied upon the false representation, which reliance was a substantial factor in the employment; and there was a causal connection between the false representation and the injury. 265 Ark. 365, 369, 578 S.W.2d 232, 234 (1979).

87 Ark. App. 145, 151, 189 S.W.3d 449, 452 (2004). Substantial evidence is that relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.*, 189 S.W.3d at 453. The issue is not whether this court might have reached a different result from the Commission; the Commission's decision should not be reversed unless fair-minded persons could not have reached the same conclusions if presented with the same facts. *Id.*, 189 S.W.3d at 453. When a claim is denied because a claimant failed to show entitlement to compensation by a preponderance of the evidence, the substantial-evidence standard of review requires that we affirm if a substantial basis for the denial of relief is displayed by the Commission's opinion. *Id.*, 189 S.W.3d at 453.

The Commission determines credibility, weighs the evidence, and resolves conflicts in medical testimony and evidence. *Godwin v. Garland Cty. Landfill*, 2016 Ark. App. 498, at 4, 504 S.W.3d 660, 662. The Commission is not required to believe the testimony of any witness but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief. *Sandeford v. United Parcel Serv., Inc.*, 2014 Ark. App. 228, at 2. It is not the role of the appellate court to weigh the evidence and judge the credibility of the witnesses. *Id.*

In workers'-compensation law, an employer takes the employee as he finds him, and employment circumstances that aggravate preexisting conditions are compensable. *Parker*, 87 Ark. App. at 152, 189 S.W.3d at 453. An aggravation of a preexisting noncompensable condition by a compensable injury is, itself, compensable. *Id.*, 189 S.W.3d at 453. An aggravation is a new injury resulting from an independent incident. *Id.*, 189 S.W.3d at 453. An aggravation, being a new injury with an independent cause, must meet the definition of a

SLIP OPINION

compensable injury in order to establish compensability for the aggravation. *Id.*, 189 S.W.3d at 453.

Arkansas Code Annotated section 11-9-102(4)(A)(i) (Repl. 2012) provides:

(A) "Compensable injury" means:

(i) An accidental injury causing internal or external physical harm to the body . . . arising out of and in the course of employment and which requires medical services or results in disability or death. An injury is "accidental" only if it is caused by a specific incident and is identifiable by time and place of occurrence[.]

Furthermore, "[a] compensable injury must be established by medical evidence supported by objective findings." Ark. Code Ann. § 11-9-102(4)(D). The claimant has the burden of proving by a preponderance of the evidence that he or she sustained a compensable injury. Ark. Code Ann. § 11-9-102(4)(E)(i).

Johnson argues that the Commission failed to adequately consider the medical records setting out objective findings that he contends establish his compensable injuries. Specifically, he cites Dr. Segal's July 7, 2014 report, wherein he noted the presence of muscle spasms in the cervical and lumbar spine.

The Commission did consider Dr. Segal's July 7 report. However, the Commission afforded it less weight because substantial evidence demonstrated that Johnson suffered from preexisting neck, back, and head (memory) problems. The record is replete with this evidence going back to 2010 (headaches, migraines, and seizures) and 2011 (neck, back, and hip pain). Before June 15, 2014, Dr. Segal treated Johnson thirty-seven times and had diagnosed him with cervical neuralgia, cervicothoracic regional myospasm, cervical spine joint dysfunction, episodic tension headache, thoracic joint dysfunction, thoracic neuralgia, thoracic paraspinal myospasm, lumbosacral neuralgia, L/S joint dysfunction, lumbar paraspinal myospasm,

sacroiliac joint dysfunction, and pelvic obliquity. Significantly, Dr. Segal's September 4, 2013 report listed the same objective findings that were listed in his September 7, 2014 report on which Johnson relies. Likewise, the evidence establishes that well before June 15, 2014, Johnson suffered from at least two head injuries, significant recurrent headaches/migraines, seizures, and short-term memory loss.

In addition to the mountain of evidence establishing that Johnson suffered from preexisting conditions in his neck, back, hip, and head, the Commission also relied on the opinion of Dr. Metcalf, who opined that there were no objective findings to support Johnson's current complaints and that his subjective complaints outweighed objective findings. Dr. Metcalf noted in his report that cervical x-rays showed only degenerative findings. Accordingly, we affirm the Commission's finding that Johnson failed to prove that objective findings supported his injuries.

Johnson also argues that the Commission's conclusions about his credibility are not supported by the record and should not act as a bar to benefits. The Commission called Johnson's credibility into question multiple times. While he testified at the hearing that he injured his neck, back, hip, and head as a result of the incident, the evidence demonstrated that Johnson stated to PAM Transport immediately following the accident that he was okay; he reported to Snodgrass a month after the incident that he was okay; he continued to work the day of the incident and for two more months; and he did not report any work-related injuries until more than two months after the incident. Further, the Commission found Johnson lacked credibility because of the untruthful answers he provided on the DOT medical examination. The section of the form in question was entitled "Health History," and the first

question was, "Any illness or injury in the last 5 years?" Johnson answered yes and listed an intestinal problem. He did not disclose on the form his significant prior history of neck, back, and head injuries or his seizure history. In fact, the form specifically asked about each of these problems, and Johnson answered no to all of them.[5] Johnson testified that he believed the health-history form required that he list current problems only. However, the Commission found that based on his level of education, his business experience, and his sophisticated legal background, his testimony "strain[ed] credibility to believe that [Johnson] was not aware of the questions being asked."

Johnson argues that the Commission erred in considering the evidence that he failed to disclose his true medical history on the DOT document. He claims it was offered in support of PAM Transport's *Shippers* defense, and the evidence "distracted" the Commission from considering the critical issue of compensability. He claims that this case turns on the medical evidence—not whether his failure to disclose past injuries and conditions affected PAM Transport's hiring decision.

We note that Johnson made no objection to the ALJ or the Commission to the introduction of the evidence of which he now complains. We do not consider issues that are raised for the first time on appeal. *Smith v. Commercial Metals Co.*, 2011 Ark. App. 218, at 13, 382 S.W.3d 764, 771.

Nevertheless, Johnson is required to prove a causal connection between his injuries and the June 15, 2014 incident. *Wal-Mart Stores, Inc. v. VanWagner*, 337 Ark. 443, 447, 990

---

[5]The record shows that Johnson was treated by Dr. Segal for cervical and lumbar complaints on January 13, 2014—sixteen days before his DOT physical.

S.W.2d 522, 524–25 (1999). In many cases, the principal evidence of causation for a claimant's injury consists of the claimant's own testimony. *Id.*, 990 S.W.2d at 525. Therefore, in large part, this case boils down to the question whether Johnson's story was credible, which makes the Commission's credibility findings relevant.

In sum, Johnson is requesting that our court reweigh the medical evidence and credibility findings made by the Commission. As stated earlier, the Commission determines credibility, weighs the evidence, and resolves conflicts in medical testimony and evidence. Viewing the Commission's decision in the light most favorable to its findings, we hold that the Commission's decision is supported by substantial evidence.

Affirmed.

ABRAMSON and HIXSON, JJ., agree.

*McKinnon Law Firm*, by: *David L. Schneider*, for appellant.

*Mayton, Newkirk & Jones*, by: *David C. Jones*, for appellee P.A.M. Transport, Inc..

SLIP OPINION