
# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-17-232

|  |  |
|---|---|
| | Opinion Delivered November 8, 2017 |
| SEBASTIAN COUNTY SHERIFF'S DEPARTMENT AND AAC RISK MANAGEMENT SERVICES<br>APPELLANTS | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION<br>[NO. G306938] |
| V. | |
| VICTORIA HARRIS HARDY<br>APPELLEE | AFFIRMED |

## BRANDON J. HARRISON, Judge

The Sebastian County Sheriff's Department (Department) appeals the opinion of the Arkansas Workers' Compensation Commission (Commission) that affirmed and adopted the opinion of the administrative law judge (ALJ) finding that Victoria Hardy is entitled to benefits under Ark. Code Ann. § 11-9-505(a) (Repl. 2012). We affirm.

Hardy, an employee of the Department, sustained a compensable right knee injury on 2 September 2012 and was awarded a twenty-percent impairment rating. She sustained a second compensable injury to her right knee on 22 August 2013 and eventually underwent a total knee replacement. In April 2016, the ALJ convened a hearing to determine, among other things, Hardy's entitlement to (1) a permanent impairment rating regarding her total knee replacement, (2) additional medical treatment, and (3) benefits under Ark. Code Ann. § 11-9-505(a).

Hardy testified to the following: In April 2015, she was taking the drug Lyrica for nerve damage from the knee surgery, and due to her pain level, her dosage of Lyrica had been doubled. Almost immediately after the dosage increase, she began stuttering. She attempted to contact her treating physician, Dr. Heim, but she was unable to reach him, and she eventually requested a change of physician and began seeing Dr. Hamby. At the time of the hearing, she still had problems with pain in her knee, and while she was still employed by the Department, she was on "medical catastrophic leave." She was able to return to work for a while after her knee replacement, but the stuttering rendered her unable to perform as a law enforcement officer because she could not communicate quickly and clearly. She asked to be considered for training to keep her training up-to-date, but that had not happened. She described a couple of instances in April 2015 in which Captain Miller, her supervisor, sent her home from work, and she had not worked since then. She did not voluntarily stop working for the Department and "would go back today if [she] could."

On cross-examination, she quantified her present amount of stuttering as "a lot." She agreed that she had trouble communicating and said that there were no jobs currently available at the Department that she could do. She said she had worked in the control room after her knee replacement, but she was not doing that job now because she could not speak on the radio and because she did not have an updated doctor's release. She explained that she had been seeing her family doctor for the stutter and that he had taken her off Lyrica, put her on gabapentin, and was now weaning her off gabapentin. Drs. Heim and Hamby

SLIP OPINION

had recommended that she see a neurologist, and her family doctor, Dr. Kradel, had opined that one of the side effects of Lyrica is unusual changes in mood or speech patterns.

On redirect, she explained that since the change in medication, her stuttering had gotten better and she was better able to focus. But, she said, her knee pain was much worse. Nevertheless, she thought that if the stuttering were taken care of, she could return to work. She said the last doctor's note she had releasing her to light-duty work was from January 2015. She stated that she had spoken to the Department a couple of weeks before the hearing about returning to work and that the human-resources department was "uncomfortable with the lack of an updated doctor's advisement." She was advised that she needed a "newer doctor's note than the one from over a year ago." On recross, she explained that she had not gotten a new doctor's release because Dr. Hamby required certain tests before he could make an assessment, and those tests had not been approved by workers' compensation. At the conclusion of Hardy's testimony, the ALJ noted on the record that Hardy's stutter was "significant."

Captain John Miller, Hardy's supervisor, testified that Hardy had returned to work as a control-room operator after her total knee replacement and had no speech difficulties. But, he said, there were a couple of occasions when her medication had caused her to have trouble standing and formulating sentences, and her eyes had appeared bloodshot and watery. He opined that Hardy was overmedicated and stated that he had sent her home because he "was not comfortable having the safety of [his] deputies in somebody's hands that was basically not capable because of their medication to constantly be observing of all

the cameras; to be able to concentrate on what she was doing." He acknowledged that the job was within the restrictions that her doctor had given her. Miller testified that if Hardy returned to work, he would have a job for her.

On cross-examination, he confirmed that he could assign her to a sedentary duty that did not have the level of responsibility of the control room. He later clarified that he could do so "[w]ith the clearance of her doctor and HR [human resources]." He agreed that the Department had the ability to accommodate Hardy but that it was up to the human-resources department to "make the call as to whether or not they will actually let her go back to work."

In a July 2016 opinion, the ALJ found that Hardy was entitled to an additional seventeen-percent impairment to her right knee, resulting in a thirty-seven-percent total impairment. The ALJ also found that additional medical treatment by Dr. Hamby was reasonable and necessary. Regarding Hardy's entitlement to benefits under § 11-9-505(a), the ALJ found:

> After review of the medical records and releases to return to work, it is clear that the claimant had been released by authorized treating physicians to return to work in a sedentary position. The claimant does have a significant stuttering problem which she alleges to be related to medications taken for her compensable injury. However, that is not the subject of the current hearing before the Commission. That alleged symptom of her compensable injury does, however, affect her ability to perform employment services for the respondent. However, given Captain Miller's familiarity with the claimant's stuttering difficulty and physical state, he testified that the respondent has work available for the claimant within the restrictions provided by her physicians. The claimant has been unable to return to work at least as of the date of the hearing in this matter due to the human resources department for the respondents unwillingness to return her to work without a more current letter or note from her doctor regarding her restrictions. It is

unreasonable to this Administrative Law Judge to require a more recent off-duty note when the claimant is certainly willing to return to work; her supervisor indicates that a position is available within the restrictions that were previously given and no doctor has changed those restrictions. As such, I find the claimant is entitled to Arkansas Code Annotated § 11-9-505(a) benefits in that the respondent has unreasonably refused to return the claimant to work when, according to her supervisor, work is available within her restrictions. The unreasonableness exists with the fact that the human resource department believes a newer mandate of restrictions is required to return her to work. The claimant has proven by a preponderance of the evidence that she is entitled to A.C.A. § 11-9-505(a) benefits in this matter.

The Department appealed to the full Commission, and in a January 2017 opinion, the Commission affirmed and adopted the ALJ's opinion as its own.[1] One commissioner dissented on the § 11-9-505(a) issue and found that Hardy had failed to prove that she was entitled to those benefits. The Department has now timely appealed to this court.

We review the Commission's decision in the light most favorable to its findings and affirm when the decision is supported by substantial evidence. *Parker v. Atl. Research Corp.*, 87 Ark. App. 145, 189 S.W.3d 449 (2004). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether the appellate court might have reached a different result from the Commission, but whether reasonable minds could reach the result found by the Commission: if so, the appellate court must affirm. *Parker v. Comcast Cable Corp.*, 100 Ark. App. 400, 269 S.W.3d 391 (2007).

---

[1]Under Arkansas law, the Commission is permitted to adopt the ALJ's opinion. *SSI, Inc. v. Cates*, 2009 Ark. App. 763, 350 S.W.3d 421. In so doing, the Commission makes the ALJ's findings and conclusions the findings and conclusions of the Commission. *Id.* Therefore, for purposes of our review, we consider both the ALJ's opinion and the Commission's majority opinion. *Id.*

Arkansas Code Annotated section 11–9–505(a)(1) states:

> Any employer who without reasonable cause refuses to return an employee who is injured in the course of employment to work, where suitable employment is available within the employee's physical and mental limitations, upon order of the Workers' Compensation Commission, and in addition to other benefits, shall be liable to pay to the employee the difference between benefits received and the average weekly wages lost during the period of the refusal, for a period not exceeding one (1) year.

Before Ark. Code Ann. § 11–9–505(a) applies, the employee must prove by a preponderance of the evidence that (1) the employee sustained a compensable injury; (2) suitable employment which is within the employee's physical and mental limitations is available with the employer; (3) the employer has refused to return the employee to work; and (4) the employer's refusal to return the employee to work is without reasonable cause. *Clayton Kidd Logging Co. v. McGee*, 77 Ark. App. 226, 72 S.W.3d 557 (2002).

The Department argues that Hardy does not qualify for benefits under this four-part test because "[t]he employer did not refuse to return Appellee to work, she was unable to perform the job for reasons that have not been shown to be related to her compensable injury." The Department also asserts that it acted reasonably in "keeping the Appellee off work while she tried to get her stuttering and medication problems resolved." In support, the Department relies on Hardy's own testimony that the problems with her medication have not been resolved, that she still has difficulty communicating, and that there were no jobs currently available at the Department that she could perform. It alleges that the ALJ and the Commission arbitrarily disregarded this testimony and "focused only on the restrictions regarding the knee and ignored the intoxication."

SLIP OPINION

In response, Hardy notes Miller's testimony that the Department could accommodate her restrictions and argues that this testimony should not be ignored just because Hardy could not identify a particular job at the Department that met her restrictions. She asserts that the Department presented no testimony to refute Miller's testimony and that there was no evidence that the intoxication issue that existed in April 2015 was still present at the time of the hearing. She contends that the Department had the burden of showing that it had reasonable cause for refusing to return her to work and that it failed to meet that burden in light of Miller's testimony that there was work available.

In its opinion, the ALJ found that Hardy had been released to work with restrictions, that Miller had stated that jobs were available within those restrictions, and that the Department was unreasonable in requiring an updated doctor's release to work. The Department fails to challenge that finding on appeal and instead argues that it acted reasonably in releasing Hardy from work in April 2015 due to complications from her medication. The Department asks us to assign more weight to Hardy's testimony, while Hardy places more emphasis on Miller's testimony. But it is within the Commission's province to determine credibility, weigh the evidence, and resolve conflicts in medical testimony and evidence. *Godwin v. Garland Cty. Landfill*, 2016 Ark. App. 498, 504 S.W.3d 660. The Commission is not required to believe the testimony of any witness but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief. *Sandeford v. United Parcel Serv., Inc.*, 2014 Ark. App. 228. It is not the role of the appellate court to weigh the evidence and judge the credibility of the witnesses. *Id.*

In this case, the Commission clearly found Miller's testimony to be credible.  Thus, we hold that the Commission's decision to award benefits pursuant to § 11-9-505(a) is supported by substantial evidence and affirm.

Affirmed.

GLOVER and VAUGHT, JJ., agree.

*Jason M. Ryburn*, for appellants.

*Walker, Shock & Harp, PLLC*, by: *Eddie H. Walker, Jr.*, for appellee.