Cite as 2022 Ark. App. 181

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV-21-321

| | |
|---|---|
| | Opinion Delivered April 27, 2022 |
| UNIVERSITY OF ARKANSAS FOR MEDICAL SCIENCES AND PUBLIC EMPLOYEE CLAIMS DIVISION<br>APPELLANTS | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION<br>[NO. G800075] |
| V. | |
| KENNETH BARTON<br>APPELLEE | AFFIRMED |

### BRANDON J. HARRISON, Chief Judge

The University of Arkansas for Medical Sciences and the Public Employee Claims Division (collectively "UAMS") appeal the decision of the Arkansas Workers' Compensation Commission (the Commission) that affirmed and adopted the opinion of the administrative law judge (ALJ) and found that Kenneth Barton had proved that he sustained a compensable injury to his thoracic spine on 3 June 2017. UAMS contends that the Commission's decision is not supported by substantial evidence. We affirm.

Barton, a police officer for UAMS, was injured on 3 June 2017 when he intervened in a domestic-disturbance incident that occurred on UAMS property. While attempting to subdue an enraged gentleman, Barton was "slung" to the concrete on his right side; the gentleman then landed on top of him, again pushing Barton's right side into the concrete. Afterward, he complained of pain "going from his lower back into his hip and into his right leg just below the knee." He also noticed that his right side was "weak and painful and would not hold him

up." Barton filed a claim for compensation on 4 January 2018, and UAMS accepted as compensable injuries to his right hip and left elbow.

Barton returned to work on June 7, still in pain and walking with a limp. From July to October 2017, he experienced pain and weakness in his right leg, had several falls from his right leg giving way, and began feeling numbness in his right foot and pain in his lower back. Dr. Paul Edwards, an orthopedist at UAMS, opined that Barton needed a hip replacement; Barton requested a second opinion, and Dr. Michael Cassat ordered an MRI of Barton's lumbar spine and right hip. Dr. Cassat also scheduled Barton for an epidural steroid injection in his lumbar spine.

Barton received the injection on October 18 and spent the next several days resting; however, prior to his follow-up appointment on October 23, he reported that he had lost all feeling below his waist and could not walk. Dr. Cassat arranged an emergency spinal MRI, which revealed a large disc bulge at T10-11 and thoracic spinal cord compression. Dr. Hazem Ahmed performed emergency surgery on Barton on October 24. Barton was transferred to a rehabilitation facility, and his condition initially improved. However, he eventually began experiencing weakness in his right knee, and as of 17 January 2018, he was unable to walk without using a walker.

Barton continued physical therapy in 2018 and was diagnosed with paraplegia. He improved in strength and mobility but still experienced falls due to right-leg weakness. When he began experiencing worsening weakness and sensation in his legs, particularly his left leg, he underwent another spinal MRI, which showed degenerative changes at T8-9 and spinal cord compression. On 11 August 2018, Barton underwent a second surgery performed by Dr.

Viktoras Palys. Barton has continued to struggle with residual back pain, numbness, and an abnormal gait.

Barton filed an additional claim for compensation to include his thoracic-spine injury on 30 March 2018. UAMS denied that he had suffered a spinal injury as a result of the June 3 incident; it also argued that Barton had failed to notify his employer of a spinal injury, so it was not liable for benefits or expenses prior to the receipt of notice. The case was submitted to an ALJ on 4 September 2020, and after reviewing almost eight hundred pages of medical records, Dr. Palys's deposition transcript, and other documents as well as receiving testimony from Barton, the ALJ issued a 49-page opinion on 2 November 2020.

The ALJ first noted that Barton had objective findings of a thoracic spine injury, citing Dr. Ahmed's surgery report and Dr. Palys's opinion that the herniation was acute in origin. As to whether the injury was caused by a specific incident that is identifiable by time and place of occurrence, the ALJ found that before the June 3 altercation, Barton had been able to perform the physical requirements of his job as a police officer without any significant physical problems. But within two days of the incident, Barton began experiencing pain and numbness in his leg, and it became more difficult for him to walk. On October 23, Barton had lost feeling below his waist, and an emergency MRI revealed a large herniation that necessitated emergency surgery. Again, the ALJ credited Dr. Palys's opinion that the injury was acute, meaning some physical event had taken place to cause the herniation.

The ALJ acknowledged Dr. Palys's opinion that Barton's symptoms prior to October 23 had been indicative of a lumbar condition and not a thoracic condition and that the fall that occurred on June 3 would have been more likely to cause a lumbar herniation than a thoracic herniation. But the ALJ noted that Dr. Palys also opined that a thoracic herniation was not out

3

of the realm of possibility and that based on his review of the medical records, he could not identify the cause of the disc herniation.

On the other hand, Dr. Ahmed had written in his discharge report that Barton "had an altercation and scuffle on 6/3/17 during his shift, injured his back." And Dr. Wayne Bruffett, who was hired by Barton's counsel to perform an independent medical examination, opined,

> I can certainly state with a reasonable degree of medical certainty that Mr. Barton's work-related injury that occurred on 6/3/2017 resulted in the thoracic disc herniation[,] cord compression[,] and subsequent need for treatment for this situation. The disc herniation resulted in his abnormal gait pattern[,] his leg pain[,] and subsequent incomplete paraplegia requiring surgery.
>
> It is not uncommon for thoracic disc herniations to have somewhat of an insidious presentation initially and then over time become more symptomatic and catastrophic. The 4 months that transpired between the initial even and [h]is need for surgery is not uncommon at all.

Quoting *Hall v. Pittman Construction Co.*, 235 Ark. 104, 105, 357 S.W.2d 263, 264 (1962), the ALJ explained that

> a causal relationship may be established between an employment-related incident and a subsequent physical injury based on evidence that the injury manifested itself within a reasonable period of time following the incident, so that the injury is logically attributable to the incident, where there is no other reasonable explanation for the injury.

The ALJ credited the opinions of Drs. Bruffett and Ahmed over that of Dr. Palys and specifically credited Dr. Bruffett's opinion that the seeming delay between the altercation and Barton's thoracic symptoms was a reasonable one. The ALJ also found that there was no other reasonable explanation for the injury. The ALJ concluded that "[Barton's] thoracic injury arose out of and in the course of his employment at UAMS and was caused by a specific incident that is identifiable by time and place of occurrence: his June 3, 2017 extremely physical altercation with a subject."

4

As to the issue of notice, the ALJ found that the operative date was 31 October 2017, when Dr. Ahmed's discharge report identified the June 3 incident as the cause of injury to Barton's back. The discharge report was sent to the Public Employee Claims Division, as shown by the file stamp from its office bearing that date. Accordingly, the ALJ found UAMS liable for benefits in connection with Barton's thoracic injury after 31 October 2017.

The ALJ also found that Barton had proved entitlement to reasonable and necessary treatment of his thoracic spine injury; that all of the treatment of that injury thus far, including his two surgeries, had been reasonable and necessary; that Barton is entitled to temporary total disability benefits for his compensable thoracic spine injury from 1 November 2017 to 15 November 2018;[1] and that Barton's counsel is entitled to a controverted attorney's fee.

UAMS appealed to the Commission. The Commission unanimously affirmed and adopted the ALJ's opinion as its own. This appeal followed. Under Arkansas law, the Commission is permitted to adopt the ALJ's opinion. *SSI, Inc. v. Cates*, 2009 Ark. App. 763, 350 S.W.3d 421. In so doing, the Commission makes the ALJ's findings and conclusions the findings and conclusions of the Commission. *Id*. Therefore, for purposes of our review, we consider both the ALJ's opinion and the Commission's majority opinion. *Id*.

We review the Commission's decision in the light most favorable to its findings and affirm when the decision is supported by substantial evidence. *Parker v. Atl. Rsch. Corp.*, 87 Ark. App. 145, 189 S.W.3d 449 (2004). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id*. The issue is not whether the appellate court might have reached a different result from the Commission, but whether reasonable minds

---

[1]His entitlement to these benefits for any period thereafter was reserved.

could reach the result found by the Commission: if so, the appellate court must affirm. *Parker v. Comcast Cable Corp.*, 100 Ark. App. 400, 269 S.W.3d 391 (2007). It is the Commission's duty to make determinations of credibility, to weigh the evidence, and to resolve conflicts in medical testimony and evidence. *Martin Charcoal, Inc. v. Britt*, 102 Ark. App. 252, 284 S.W.3d 91 (2008).

For its first point, UAMS argues that the Commission erred in finding that Barton sustained a compensable injury to his thoracic spine on 3 June 2017. UAMS contends that Barton initially reported injuries only to his right hip and left elbow, which were accepted as compensable; that in September 2017, three months after the incident, Barton complained of lumbar spine pain, for which he received a steroid injection on 18 October 2017; and that it was not until his follow-up visit on October 23 that he reported numbness from the waist down and an inability to walk, which led to an MRI showing a thoracic herniated disc and spinal cord compression. In addition, Barton did not file a Form C claiming a thoracic spine injury until 30 March 2018, ten months after his fall. UAMS also argues that Dr. Palys's opinion was more detailed than the opinions from Dr. Ahmed and Dr. Bruffett and that "[t]he contemporaneous medical reports following the June 3, 2017 incident and the deposition testimony of Dr. Palys . . . are the best evidence to review in this case." Finally, citing Barton's preexisting degenerative disc disease and previous complaints of thoracic spine pain dating back to 2014, UAMS argues that it requires "sheer speculation and conjecture" to connect his thoracic spine condition and subsequent surgery to the June 3 incident.

All of the facts posited by UAMS were before the Commission and considered when reaching its decision. UAMS, in essence, is asking this court to reweigh the evidence and credibility findings made by the Commission; however, we will not do so as it is the

Commission's duty to make credibility determinations and to weigh the evidence. *Martin Charcoal*, *supra*.

Next, UAMS asserts that the Commission erred in finding that it had knowledge that Barton's condition arose out of and in the course of employment as of 31 October 2017, after Barton's first surgery, based on Dr. Ahmed's discharge report. Arkansas Code Annotated section 11-9-701 provides in part that

> (a)(1) Unless an injury either renders the employee physically or mentally unable to do so, or is made known to the employer immediately after it occurs, the employee shall report the injury to the employer on a form prescribed or approved by the Workers' Compensation Commission and to a person or at a place specified by the employer, and the employer shall not be responsible for disability, medical, or other benefits prior to receipt of the employee's report of injury.
>
> . . . .
>
> (b)(1) Failure to give the notice shall not bar any claim:
>
> (A) If the employer had knowledge of the injury or death;
>
> (B) If the employee had no knowledge that the condition or disease arose out of and in the course of the employment; or
>
> (C) If the commission excuses the failure on the grounds that for some satisfactory reason the notice could not be given.

Ark. Code Ann. § 11-9-701(a)(1), (b)(1) (Repl. 2012). UAMS argues that the Commission erred in making its finding because § 11-9-701(a) clearly requires the employee to report the injury on an approved form, which Barton did not do until 30 March 2018.

UAMS's argument tracks the language in subsection (a), but the Commission found that UAMS had notice based on subsection (b)(1)(B). UAMS makes no argument that it did not receive such notice on 31 October 2017 nor does it challenge the sufficiency of that notice.

7

Finally, UAMS asserts that the decision in this case is inconsistent with prior precedents from the Commission and this court. It discusses several cases in which a back injury occurring after a compensable injury was held not causally related to the compensable injury, particularly noting the lapse of time and the lack of documentation of a back injury in the medical records contemporaneous to the compensable injury. However, this argument overlooks a basic tenet of case law, which is that each case must be determined on its own facts. In this case, the Commission found that the delay between the June 3 incident and Barton's thoracic symptoms was reasonable and that there was no other reasonable explanation for the injury. We hold that substantial evidence supports the Commission's findings that a causal relationship existed between the June 3 incident and Barton's thoracic spine injury and that UAMS had notice of this injury as of 31 October 2017.

Affirmed.

ABRAMSON and GRUBER, JJ., agree.

*Robert H. Montgomery*, Public Employee Claims Division, for appellants.

*Moore, Giles & Matteson, L.L.P.*, by: *Greg Giles*, for appellee.

8