Cite as 2025 Ark. App. 330

# ARKANSAS COURT OF APPEALS
## DIVISION I
### No. CV-24-633

| | |
|---|---|
| CRYSTAL GAINEY<br><br>APPELLANT<br><br>V.<br><br>GENOA SCHOOL DISTRICT<br><br>APPELLEE | Opinion Delivered May 28, 2025<br><br>APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION<br><br>[NO. G804863]<br><br>AFFIRMED |

## BART F. VIRDEN, Judge

Crystal Gainey appeals the Arkansas Workers' Compensation Commission's finding that she failed to prove she is permanently and totally disabled and that she is not entitled to wage-loss disability benefits. We affirm.

### I. *Relevant Facts*

On October 10, 2023, a hearing was held before an administrative law judge (ALJ) to determine whether Crystal Gainey is permanently and totally disabled or entitled to wage-loss disability benefits. Gainey testified that she is sixty-two years old and had completed the tenth grade. On July 16, 2018, she and three coworkers were waxing and stripping the floors at the school where she worked. The floor was slippery, and she fell on her tailbone and hit the back of her head. As a result of the accident, Gainey experienced severe back pain, headache, swollen ribs, and difficulty walking and breathing. Physical therapy did not help,

and in October 2019, she underwent decompression and fusion surgery. From the time of her accident in July 2018 until she had surgery in October 2019, Gainey continued to work "light duty." Gainey testified that her activity restrictions included not lifting anything over ten pounds; taking breaks every thirty to forty minutes when driving; no walking on concrete; no sitting or walking too long; and no twisting, reaching, stretching or bending. She stated that every job she was given after her accident violated some or all those restrictions. For example, Gainey was assigned the job of picking up trash while riding a "Gator" which is a type of task utility vehicle. The Gator wrenched her back, and she testified that she told the custodial supervisor, CiCi Burns, that it was causing her pain; however, she was not relieved from this duty. Gainey was also assigned tasks such as cleaning windows and straightening the classrooms, which violated her restrictions. Gainey recalled that she worked in the cafeteria, which included scrubbing potatoes over a large sink, lifting boxes of food, helping serve food, leaning over the sink to wash pots and pans, putting away the pots and pans, and scrubbing the floors. She was assigned guard duty, which entailed standing in a ditch for an hour in the afternoon. She testified that she was told if she did not do the work, she would be fired. Gainey explained that there were jobs she could do, like helping teachers in their classrooms, making copies, walking the students back and forth to the bathroom, and helping with arts and crafts and holiday parties, "but the Superintendent couldn't stand seeing me do those kinds of things[.]" She testified that no job within her restrictions was ever offered to her on a permanent basis. Three weeks after the October 2019 surgery while she was still recovering at home, Burns called Gainey and informed her that if she did not

return to work, she would be fired. Gainey returned to work in November 2019 and worked until February 2020 when she learned that her husband was going to have heart surgery in early March and that he would have six weeks of recovery. Gainey spoke with Genoa School District (GSD) Superintendent Debbie Huff about taking FMLA to care for her husband; however, Gainey did not qualify. Huff told Gainey that she had to work or be fired, and she recommended that if Gainey chose to leave work, she should resign because she would have a better chance of being rehired. On February 26, Gainey submitted a written resignation stating that she was leaving work to take care of her husband. She testified that during his convalescence, she cooked for him and changed his bandages, but she was not required to lift him. On April 15, Gainey underwent a functional capacity assessment and was assigned permanent restrictions in the light-duty category. In September 2021, she was declared to have reached maximum medical improvement and received an impairment rating of 25 percent to the body as a whole. At the time of the hearing, she had not applied for any jobs with the GSD.

CiCi Burns testified that Gainey's lifting, bending, and twisting restrictions after her accident were accommodated, and her pay was not reduced. She stated that Gainey never complained about her job duties. Burns testified that Gainey was assigned duties such as wiping boards, and she was provided extension poles so that she would never have to lift her arms above her waist. Gainey picked up the classroom trash bins that weighed less than ten pounds and set them in the hallway, and she disinfected and wiped down tables and cabinets. Burns testified that she modified Gainey's duties as needed, and "they would get lighter every

3

time, so we were not making her do anything that she could not do." Burns read from a document that recorded Gainey's job duties, listing her work as "monitoring kids exiting and entering the building, cleaning windows, picking up trash, . . . putting food on trays and handing trays to students." Burns stated that she never threatened to fire Gainey except when she informed Gainey that she had to return to work three weeks after her surgery or be terminated.

Gainey's friend Mattie Diane Watkins testified that she had known Gainey for thirty years, and Gainey had worked for her for ten years cleaning her home. Before the accident, Gainey was strong, "rambunctious," and extremely mobile, climbing ladders, intensely cleaning her home, etc. They traveled together on road trips before the accident. After Gainey was injured in July 2018, Gainey could not ride in the car for any length of time and had to stop frequently. Gainey was unable to do any cleaning, and Watkins testified that Gainey moved "feebly" and "very slowly, very carefully." She described Gainey as honest, straightforward, and hardworking.

Gainey's husband, Boyce, testified that before the accident, Gainey worked hard, did chores in the house, and loved to garden. Since the accident, she had made "a 180-degree turn." Boyce testified that he took over the household chores, such as making the beds, vacuuming, sweeping, washing dishes, and doing the laundry, and he accompanied her to the grocery store because she was unable to go by herself. Boyce explained that Gainey could no longer have cookouts with her grandkids. He stated that when she went back to work

after her injury, at the end of the workday, "she'd come home crying." On cross-examination, he testified that Gainey is able to drive him to doctor's appointments in Little Rock.

GSD Superintendent Debbie Huff testified that she met Gainey in February 2020 when Gainey and Burns contacted her about possible FMLA for Gainey to care for her husband. During their meeting, they determined that Gainey did not qualify for FMLA. Huff testified that she suggested that Gainey consider resigning rather than being fired because it would give her a better chance of being rehired. Gainey resigned and did not apply for any jobs with the GSD, which were posted on the GSD website. Huff stated that there were many jobs available; however, on cross-examination she conceded that many of the jobs listed require a college degree or paraprofessional testing. Huff could not name a cafeteria or custodial job that could accommodate Gainey's restrictions.

On March 1, 2024, the ALJ entered an opinion denying Gainey's request for permanent and total disability benefits and wage-loss disability benefits. The ALJ determined that Gainey failed to prove by a preponderance of the evidence that she was rendered permanently and totally disabled by her compensable back injury or that she sustained any wage-loss disability over and beyond her 25 percent anatomical impairment. The ALJ found that Gainey had suffered a compensable injury at work in July 2018, and she was provided appropriate medical care. Gainey returned to work on December 18, performing light-duty work in various job positions. In February 2020, she resigned from her position to care for her husband who was going to have heart surgery. On April 19, 2020, Gainey underwent a functional capacity assessment and was assigned permanent restrictions in the light-duty

category. In September 2021, she was assessed with a 25 percent whole body anatomical impairment for her compensable back injury and was at maximum medical improvement. GSD accepted the conclusion and paid the 25 percent impairment rating. The ALJ found that Gainey is able to drive, is able to prepare meals for herself and her husband, is able to walk without assistance, and does not take any medication for her back pain. The ALJ found that

> [c]onsidering all of the above-mentioned reasons, particularly the fact that the Claimant successfully returned to work following her fusion surgery and was able to perform her assigned light-duty employment activities without any documented problems or difficulties performing her duties, until she resigned her position with the school district to care for her husband, and because she is able to perform work in the light duty category, I am unable to find that the Claimant has been rendered permanently and totally disabled by her compensable back injury of July 2018.

The ALJ further addressed the issue of wage-loss disability benefits, concluding that

> [b]ecause the preponderance of the credible evidence shows that the Claimant successfully returned to work for the school district after her back surgery and had no loss or decrease in her earning capacity, I am unable to find that the Claimant sustained any wage loss disability as a result of her compensable back injury of July 16, 2018.

The full Commission affirmed and adopted the ALJ's opinion. Gainey timely filed her notice of appeal, and this appeal followed.

## II. *Discussion*

On appeal, Gainey argues that the Commission erred as a matter of fact and law in finding that she did not prove that she is permanently and totally disabled or entitled to wage-loss benefits. She asserts that the Commission's decision denying wage-loss benefits was based solely on her failure to apply for work after she resigned, and the Commission should

6

have considered other factors, such as age, education, work experience, motivation, postinjury income, credibility, and demeanor. Gainey also contends that because she never received a bona fide offer to return to work, she is entitled to wage-loss benefits. Her arguments are not well taken.

Under Arkansas law, the Commission is permitted to adopt the ALJ's opinion. *SSI, Inc. v. Cates*, 2009 Ark. App. 763, 350 S.W.3d 421. In so doing, the Commission makes the ALJ's findings and conclusions the findings and conclusions of the Commission. *Id.*

It is the Commission's duty to make determinations of credibility, to weigh the evidence, and to resolve conflicts in medical testimony and evidence. *Martin Charcoal, Inc. v. Britt*, 102 Ark. App. 252, 284 S.W.3d 91 (2008). We review the Commission's decision in the light most favorable to its findings and affirm when the decision is supported by substantial evidence. *Parker v. Atl. Rsch. Corp.*, 87 Ark. App. 145, 189 S.W.3d 449 (2004). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether the appellate court might have reached a different result from the Commission but whether reasonable minds could reach the result found by the Commission: if so, the appellate court must affirm. *Parker v. Comcast Cable Corp.*, 100 Ark. App. 400, 269 S.W.3d 391 (2007).

Permanent total disability is defined by statute as the inability, because of compensable injury or occupational disease, to earn any meaningful wages in the same or other employment. Ark. Code Ann. § 11-9-519(e)(1) (Repl. 2012). The employee bears the burden of proving the inability to earn any meaningful wage. Ark. Code Ann. § 11-9-

7

519(e)(2).The Commission has the duty to determine disability, taking into consideration the medical evidence and other factors affecting wage loss, such as the claimant's age, education, work experience, motivation, postinjury income, credibility, and demeanor as well as other factors. *Gant v. First Step, Inc.*, 2023 Ark. App. 393, 675 S.W.3d 445. Pursuant to Arkansas Code Annotated section 11-9-522(b)(1) (Repl. 2012), when a claimant has been assigned an anatomical-impairment rating to the body as a whole, the Commission has the authority to increase the disability rating, and it can find a claimant permanently and totally disabled on the basis of the wage-loss factors. *Lee v. Alcoa Extrusion, Inc.*, 89 Ark. App. 228, 233, 201 S.W.3d 449, 454 (2005).

Arkansas Code Annotated section 11-9-522(b) provides the following:

(1) In considering claims for permanent partial disability benefits in excess of the employee's percentage of permanent physical impairment, the Workers' Compensation Commission may take into account, in addition to the percentage of permanent physical impairment, such factors as the employee's age, education, work experience, and other matters reasonably expected to affect his or her future earning capacity.

(2) However, so long as an employee, subsequent to his or her injury, has returned to work, has obtained other employment, or has a bona fide and reasonably obtainable offer to be employed at wages equal to or greater than his or her average weekly wage at the time of the accident, he or she shall not be entitled to permanent partial disability benefits in excess of the percentage of permanent physical impairment established by a preponderance of the medical testimony and evidence.

Crystal likens her case to *Hope School District v. Wilson*, 2011 Ark. App. 219, 382 S.W.3d 782, in which we affirmed the Commission's decision finding that Wilson's claim for wage-loss benefits was not barred by Arkansas Code Annotated section 11-9-522(b) because the school district did not make a bona fide offer of employment. Wilson was

employed year to year with the district and was injured on the job in August 2007. After his injury, he returned to work, and in April 2008, he asked that his contract not be renewed and signed a letter stating that he did not want to be employed as a custodian the following year. His employment ended in August 2008, and he was not offered other employment at the end of the 2007–2008 school year. Instead, Wilson was told that "he would have been recommended" for work for the following school year. The Commission did not consider a recommendation for employment a bona fide offer of employment and found that Wilson was not barred from wage-loss benefits. In *Hope School District*, the Commission's determination hinged on the fact that Wilson would only be *recommended* for a job and not offered a job; thus, it is distinguishable from the instant case. Here, the Commission determined that the GSD made Gainey a bona fide offer of employment after her injury, and she was employed in jobs within her restrictions. The Commission found that Gainey accepted these jobs and did them without complaint. As stated above, we review the Commission's decision in the light most favorable to its findings. *See Parker*, *supra*. Because reasonable minds could reach the result found by the Commission, we must affirm.

We acknowledge Gainey's argument that she did not receive a bona fide offer of employment *after* she had reached maximum medical improvement or received permanent work restrictions; thus, she is not barred by section 11-9-522(b)(2) from wage-loss benefits. We disagree with her interpretation of the statute. Section 11-9-522(b)(2) provides that a claimant is barred from wage-loss benefits when after his or her injury, the claimant returns to work or receives a bona fide offer of work at the same rate of pay. Gainey returned to work

9

after her injury at the same or better rate of pay; thus, the Commission correctly decided that she is barred from wage-loss benefits. Gainey's argument that the Commission improperly considered only her failure to apply for work is without merit because it relies on her misinterpretation of the statute.

The instant case is similar to *Redd v. Blytheville School District No. 5*, 2014 Ark. App. 575, 446 S.W.3d 643, in which Redd, a custodian, was injured on the job and returned to work with restrictions and at the same pay. There was testimony that his job duties were within his restrictions. Eventually, Redd realized he could not do the work and retired. He requested additional benefits but was denied because the Commission found that he had received a bona fide offer of work that was within his ability. We affirmed. Here, there was conflicting evidence as to whether Gainey was given jobs within her ability, but the Commission sided with the GSD and noted that she had never complained about her job duties. Because there is substantial evidence to support the Commission's decision, we affirm.

Affirmed.

BARRETT and MURPHY, JJ., agree.

*Gary Davis*, for appellant.

*Friday, Eldredge & Clark, LLP*, by: *Guy Alton Wade* and *Hannah F. Banks*, for appellees.

10